UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW CLARK and GREGORY MALANDRUCCO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No.: 10-CV-1803 |
| CITY OF CHICAGO, OFFICER BRIAN POSTRELKO, OFFICER MICHAEL TORRES, OFFICER NELSON CRESPO, OFFICER JOHN REPPAS, OFFICER ELISE MIDDLETON, OFFICER RICK PODGORNY, OFFICER DONALD SHROEDER, UNKNOWN PLAINCLOTHES CHICAGO POLICE OFFICERS, and UNKNOWN UNIFORMED CHICAGO POLICE OFFICERS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### MOTION TO DISMISS

NOW COME defendants OFFICER BRIAN POSTRELKO, OFFICER MICHAEL TORRES, OFFICER NELSON CRESPO, OFFICER JOHN REPPAS, OFFICER ELISE MIDDLETON, OFFICER RICK PODGORNY, and OFFICER DONALD SHROEDER, by and through their attorneys, Timothy P. Scahill and Steven B. Borkan of BORKAN & SCAHILL, LTD., and moving pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiffs', MATTHEW CLARK and GREGORY MALANDRUCCO, First Amended Complaint. In support thereof, defendants state as follows:

### INTRODUCTION

On May 7, 2010, plaintiffs, MATTHEW CLARK and GREGORY MALANDRUCCO (collectively referred to hereinafter as "plaintiffs" and individually as "CLARK" and "MALANDRUCCO"), filed the above-captioned suit against defendants OFFICER BRIAN POSTRELKO ("OFFICER POSTRELKO"), OFFICER MICHAEL TORRES ("OFFICER TORRES"), OFFICER NELSON CRESPO ("OFFICER CRESPO"), OFFICER JOHN REPPAS ("OFFICER REPPAS"), OFFICER ELISE MIDDLETON ("OFFICER MIDDLETON"), OFFICER

RICK PODGORNY ("OFFICER PODGORNY"), and OFFICER DONALD SHROEDER ("OFFICER SHROEDER") as well as a number of other groups of defendants referred to as "UNKNOWN PLAINCLOTHES CHICAGO POLICE OFFICERS" and "UNKNOWN UNIFORMED CHICAGO POLICE OFFICERS." *See* First Am. Compl. This motion is brought solely on behalf of OFFICER POSTRELKO, OFFICER TORRES, OFFICER CRESPO, OFFICER REPPAS, OFFICER MIDDLETON, OFFICER PODGORNY, and OFFICER SHROEDER (collectively referred to hereinafter as the "MOVING OFFICERS") and not on behalf of the alleged UNKNOWN PLAINCLOTHES CHICAGO POLICE OFFICERS and UNKNOWN UNIFORMED CHICAGO POLICE OFFICERS.

The essence of plaintiffs' First Amended Complaint appears to be that, in the early morning hours of February 7, 2010 after a night out, plaintiffs became involved in a physical altercation with a number of unknown individuals at a taco stand located at 2001 Western in the City of Chicago. First Am. Compl. at ¶¶ 2, 16-50. Plaintiffs surmise in their First Amended Complaint that the individuals with whom they were involved in this physical altercation were "plainclothes" Chicago police officers based upon a statement made by a female accompanying such individuals that "They're cops-They're going to beat your ass." *Id.* at ¶ 29.

Plaintiffs allege that a number of uniformed police officers (including, but apparently not limited to, the MOVING OFFICERS) arrived on the scene while this altercation was ongoing and that certain of the arriving officers interceded and broke up the altercation. *Id.* at ¶¶ 32-42. Plaintiffs do not allege that they were arrested or detained by the MOVING OFFICERS or any other arriving uniformed police officers. *Id.* Indeed, plaintiffs admit that they were instructed to leave the scene and go home after the alleged physical altercation was broken up by these officers. *Id.* at ¶ 39. However, plaintiffs aver that the MOVING OFFICERS failed to provide medical assistance to plaintiffs despite their need for it. *Id.* at ¶¶ 2, 39-40. However, plaintiffs allege that they later sought and received medical attention at St. Mary and Elizabeth Medical Center. *Id.* at ¶ 43. Plaintiffs also appear to take issue with the fact that the uniformed police officers told plaintiffs that they were not going to arrest the individuals with whom they were involved in the altercation and "allowed them to leave the scene without questioning them or documenting the attack." *Id.* at ¶ 38.

Plaintiffs' First Amended Complaint contains no separate Counts or claims and, accordingly,

plaintiffs' precise legal claims against each of the individual MOVING OFFICERS are impossible to discern. *See* First Am. Compl. at ¶¶ 58-69. The only specific reference to any of the MOVING OFFICERS is in connection with allegations concerning the alleged failure to render medical assistance. *Id.* at ¶ 2. Beyond this, all of plaintiffs' claims appear to be directed simply to "Defendant Officers" which could possibly include the putative "Plainclothes Officers" who allegedly beat plaintiffs, some or none of the MOVING OFFICERS, and/or a variety of other "unknown" officers not specifically named in this suit. *Id.* at ¶¶ 58-62. Further complicating matters, plaintiffs do not even allege participation in the asserted constitutional violations by all of the police officers. *Id.* at ¶¶ 32-42. To the contrary, plaintiffs repeatedly assert only that "one or more" of the named defendants committed the alleged violations. *Id.*

For the reasons set forth below, plaintiffs' First Amended Complaint does not state a viable cause of action against the MOVING OFFICERS and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

Dismissal pursuant to Rule 12(b)(6) is appropriate when, taking all the facts alleged in the complaint to be true and construing all inferences in plaintiff's favor, the plaintiff fails to state a claim upon which relief can be granted. *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 618 (7th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must contain factual content sufficient to allow the court to infer that the defendants are liable for the misconduct alleged. *Id*. In other words, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

**A.  Failure to Provide Medical Aid.**

As noted above, the only specific reference to the individuals encompassing the MOVING OFFICERS appears to be plaintiffs' allegations that said officers failed to provide medical assistance to the plaintiffs on the scene of the above-described occurrence. *Id.* at ¶¶ 2, 39-40. This is not a

viable legal claim in this case.

The Constitution generally confers no "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County. Dept. of Social Services*, 489 U.S. 189, (1989); *Estate of Stevens v. City of Green Bay*,105 F.3d 1169, 1174 (7th Cir. 1997). There are two narrow exceptions to this axiom where the state may have a limited duty to render medical aid: (1) custodial settings in which the state has limited the individual's ability to care for himself; and (2) when the state affirmatively places the individual in a position of danger the individual would not otherwise have faced and thereby renders them more vulnerable to a subsequent injury or harm. *DeShaney*, 489 U.S. at 199-202.

As to the latter exception, the Seventh Circuit has stated that:

> [A plaintiff] must demonstrate that the state greatly increased the danger to [the plaintiff] while constricting access to self-help; it must cut off all avenues of aid without providing a reasonable alternative. Only then may a constitutional injury have occurred. *Estate of Stevens*, 105 F. 3d at 1177.

The Seventh Circuit cautions that cases where it has found this exception applies are "rare and often egregious." *Estate of Allen v. City of Rockford*, 349 F. 3d 1015, 1022 (7th Cir. 2003). In this regard, such cases are essentially all permutations on a set of facts where the police render an individual more susceptible to harm and such harm thereafter results. *See e.g. Reed v. Gardner*, 986 F.2d 1122, 1125-1127 (7th Cir. 1993)(officers arrested sober driver and left keys with intoxicated passenger who later killed other motorists in accident); *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998)(police released tape of informant's anonymous tip to suspect despite warning by informant that he would be in danger, ultimately leading to informant's murder); *White v. Rockford*, 592 F.2d 381 (7th Cir. 1979)(after arresting their uncle, officers left children by side of the road, ultimately leading to injury of child).

Along these lines, a plaintiff must establish that he sustained a subsequent injury which was proximately caused by the state's constriction of self help. *Estate of Stevens*, 105 F. 3d at 1177; *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009)(state's conduct must be the proximate cause of plaintiff's injury). In other words, merely alleging that one is in need of medical attention from a prior incident and that the police refuse to help does not state a viable

4

constitutional claim. *See Hill v. Shobe,* 93 F.3d 418, 422 (7th Cir. 1996)(rejecting claim of failure to provide medical assistance arising from police ignoring plaintiff's injuries after accident; "The government, however, has no affirmative constitutional duty to provide emergency medical services to its citizens. And while most municipalities choose to provide such services, 'they have no constitutional duty to provide competent services to people not in their custody.'...Plaintiffs do not assert that [plaintiff] was taken into custody following the accident; they claim that defendants ignored him altogether."); *Archie v. City of Racine*, 847 F.2d 1211, 1220-24 (7th Cir. 1988); *Foley v. Village of Weston*, 2007 WL314465,*3 (W.D. Wis. 2007)("Unless a citizen is in the custody of the state, or a defendant has created a dangerous situation that renders the plaintiff more vulnerable to danger than he would have been otherwise, municipalities and their agents are under no constitutional obligation to provide medical services to injured persons."); *Torres v. City of Chicago*, 194 F.Supp.2d 790 (N.D. Ill. 2002) (action dismissed where responding officers failed to promptly summon medical assistance for gunshot victim; "no affirmative duty to provide medical care, even if he was aware that Mr. Rivera desperately needed it"); *Cowgill v. City of Marion*, 127 F.Supp.2d 1047 (N.D. Ind. 2000)(dismissing suit where responding officers refused to aid or summon ambulance for individual who suffered heart attack after verbal altercation).

With respect to the MOVING OFFICERS, plaintiffs cannot meet *any* of the required elements of a viable "failure to render medical assistance" claim. Plaintiffs admit that they were not arrested or taken into custody by the MOVING OFFICERS. First Am. Compl. at ¶ 38. Indeed, plaintiffs specifically admit that they were simply instructed to go home after the incident. *Id.* Plaintiffs do not allege that the MOVING OFFICERS "constricted" their ability to obtain medical assistance on their own and, in fact, plaintiffs allege that they, in fact, obtained said medical assistance on their own after leaving the scene. *Id.* at ¶ 43. Plaintiff also do not allege that they were rendered more vulnerable to a subsequent injury as a result of the failure to render medical assistance and, indeed, they do not allege that they *even suffered any subsequent injury* as a result of the alleged inactions of the MOVING OFFICERS. *Id.* at ¶¶ 32-44. Accordingly, plaintiffs' allegations are entirely insufficient to state a cause of action for failure to render medical assistance and this claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B.      Plaintiffs' Putative Failure to Enforce the Law Claim is Legally Defective.**

Plaintiffs also appear to allege a claim based on a failure or refusal of the police to arrest the individuals with who they were involved in the above-described physical altercation. First Am. Compl. at ¶¶ 37-38. Again, because of plaintiffs' failure to plead any specific counts in their First Amended Complaint, it is unclear what the Constitutional basis for any such claim would be. Regardless, it is pellucidly clear that neither the Constitution nor Section 1983 create any viable cause of action based on a refusal or failure to arrest a particular individual for alleged criminal conduct or otherwise affirmatively enforce the law in a particular fashion to the benefit of a particular citizen. *See Hernandez v. City of Goshen, Indiana*, 324 F.3d 535, 537-39 (7th Cir. 2003)(affirming Fed. R. Civ. P. 12(b)(6) dismissal of claim of failure to respond to threat of violence at workplace); *Windle v. City of Marion, Ind.*, 321 F.3d 658, 661-62 (7th Cir. 2003); *Losinski v. County of Trempealeau*, 946 F.2d 544, 551-52 (7th Cir. 1991)(allegations of failure to arrest did not present a viable claim under Section 1983). Accordingly, to the extent plaintiffs assert a claim based on the failure to arrest or enforce the law with respect to plaintiffs' alleged assailants, such claim is legally defective and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**C.      Plaintiffs' Fail to Allege a Viable Excessive Force Claim against the MOVING OFFICERS.**

Plaintiffs next appear to allege an "excessive force"-type claim. First Am. Compl. at ¶¶ 58-62. In support of this claim, plaintiffs' First Amended Complaint confusingly lumps together numerous distinct groups of actors and individuals as allegedly committing such actions. *Id.* Specifically, plaintiffs allege in their "Legal Claims" section that such actions were committed simply by "the Defendant Officers," an allegation which is utterly meaningless considering that plaintiffs have alleged a beating inflicted by alleged "Plainclothes Officers" prior to the alleged arrival of any uniformed police officers. *Id.* at ¶¶ 16-32, 58-62, 64-67. The body of plaintiffs' First Amended Complaint fails to clarify matters. Indeed, while plaintiffs appear to allege that certain "Uniformed Officers" had physical contact with plaintiff MALANDRUCCO[1] upon arrival to the

---

[1] In this regard, as it pertains to plaintiff CLARK, plaintiffs do not allege that any of the "Uniformed Officer Defendants" had any physical contact with plaintiff CLARK or even witnessed same. Accordingly, any "excessive force" claim brought by plaintiff CLARK is barred for failure to allege personal involvement in a constitutional violation. *Gossmeyer*, 128 F.3d at 494-95.

fight in progress, plaintiffs fail to specify which particular "Uniformed Officers" they are referring to (*id.* at ¶¶ 32-42), which is particularly problematic because plaintiffs do not limit the group of "Uniformed Officer Defendants" to the individually named MOVING OFFICERS (*Id.* at ¶ 2). In this regard, plaintiffs only allege that "one of" or "one or more" of the alleged "Uniformed Officer Defendants" (which, again, may or may not include *any* of the MOVING OFFICERS) had any physical contact with plaintiffs. *Id.* In fact, the only specific reference to any of the named MOVING OFFICERS is a single allegation in connection with plaintiffs allegations regarding these officers' alleged failure to provide medical aid. *Id.* at ¶ 2.

Because an action under Section 1983 is based on personal liability and predicated upon fault, an individual cannot be held liable unless he caused or participated in the alleged constitutional violation. *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008); *Gossmeyer v. McDonald*, 128 F.3d 481, 494-95 (7th Cir. 1997); *Starzenski v. City of Elkhart*, 87 F.3d 872, 879-80 (7th Cir. 1996); *Duncan v. Duckworth*, 644 F.2d 653-55 (7th Cir. 1981). In this regard, the Seventh Circuit has made clear that allegations that "one or more of the defendants" violated a particular constitutional right does not plead personal involvement sufficient to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), because such "vague phrasing" fails to "adequately connect specific defendants to illegal acts." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)(affirming dismissal of individually named defendants for constitutional violations that were alleged to have been committed by "one or more of the Defendants"). Similarly, simply attributing various constitutional violations to a host of "defendant officers" is not sufficient. *See e.g. Carter v. Dolan*, 2009 WL 1809917, *3 (N.D. Ill. 2009)("A complaint that refers to multiple police officer defendants collectively as "defendant officers" in each of the factual allegations does not provide each defendant officer with sufficient notice of the wrongdoings alleged. This is especially true where nine Defendant officers are listed on the face of the complaint.").

While pleading a constitutional violation against "one or more" defendants or simply "defendant officers" is itself defective, the fact that such defendants include allegedly "unknown" individuals as well as named ones makes such pleading utterly meaningless and legally defective under the Federal Rules. *See Alejo v. Heller*, 328 F.3d 930, 935-36 (7th Cir. 2003)(pleading against unknown defendants insufficient to establish personal involvement against named defendant); *see*

*also Grieveson*, 538 F.3d at 778 ("[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct" is insufficient to prevail in Section 1983 claim).

In sum, plaintiffs' pleading fails to specify whether any of the MOVING OFFICERS were personally involved in any "excessive force" against plaintiffs. Indeed, the only specific reference to any of the named MOVING OFFICERS is a single allegation regarding plaintiffs' defective "failure to render medical assistance" claim. These allegations are insufficient as a matter of law to establish the personal involvement of the MOVING OFFICERS in any excessive force claim as a matter of law and, accordingly, these claims must be dismissed against the MOVING OFFICERS pursuant to Fed. R. Civ. P. 12(b)(6) and 8(a).

**D.     Failure to Intervene**.

In addition to the above, plaintiffs appear to allege a "failure to intervene" claim of some sort against the MOVING OFFICERS. This claim appears to be based on a theory that "one or more" of "the Defendant Officers" failed to intervene to prevent the above-described constitutional claims. First Am. Compl. at ¶ 62. This claim is defective for a host of independent reasons.

First, these claims are defectively plead for the same reasons that plaintiffs' "excessive force" claim is defective. Again, the alleged "failure to intervene" is directed simply to "[o]ne or more" of "the Defendant Officers." S*ee* First Am. Compl. at ¶ 62. These categories of allegations (*i.e.* "one or more" and "defendant officers") are *each* independently defective and *in combination* are utterly meaningless with respect to each individual MOVING OFFICER. *Brooks*, 578 F.3d at 580; *Alejo*, 328 F.3d at 935-36; *Carter*, 2009 WL 1809917 at *3.

Second, with respect to the "failure to render medical assistance" and "failure to arrest" claims, these claims are defective because the underlying conduct at issue is not unconstitutional in the first instance even if true. A "failure to intervene" claim requires that a plaintiff establish "the officer is informed of the facts that establish a constitutional violation and has the ability to prevent it." *Montano v. City of Chicago*, 535 F. 3d 558, 569 (7th Cir. 2008). It is axiomatic that an officer cannot be held liable for "failing to intervene" to prevent actions that are not themselves unconstitutional. *See Harper v. Albert*, 400 F.3d 1052, 1063-64 (7th Cir. 2005)("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional

violation"). Thus, any failure to intervene claim based on these theories are defective and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Third, with respect to the alleged beating of plaintiffs by the putative "Plainclothes Officer Defendants," plaintiffs allege that this beating took place almost exclusively prior to the arrival of uniformed police officers and, more importantly, plaintiffs do not allege that any uniformed officers were aware of these individuals' alleged statuses as police officers at any time. First Am. Compl. at ¶¶ 16-42. Indeed, plaintiffs allege that their own conclusion that these individuals were, in fact, police officers is based exclusively on the statement of a woman who was with these individuals who stated "They're cops-They're going to beat your ass" that occurred *prior to* the arrival of any of the MOVING OFFICERS. *Id.* at ¶¶ 29-42. More importantly, however, plaintiffs affirmatively allege that the alleged "Plainclothes Officer Defendants" were never questioned by the arriving officers and that these individuals were permitted to leave the scene without any such questioning. *Id.* at ¶ 38.

At the outset, police officers obviously cannot unconstitutionally "fail to intervene" in events that occur prior to their arrival. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)("An officer *who is present* and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer *had reason to know*: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.")(emphasis added); *see also Hughley v. Hudgins*, 1997 WL 285889, *3 (N.D. Ill. 1997) (dismissing failure to intervene claim where plaintiff "failed to state any specific facts giving rise to an inference that defendant officers knew of perpetrating officer's actions or to an inference that defendant officers had a realistic opportunity to intervene to prevent the harm; conclusory allegations insufficient). Thus, any "failure to intervene" claim based on plaintiffs' alleged beating prior to the arrival of any uniformed officers is defective on these grounds alone.

Furthermore, to the extent that the fracas at issue was still ongoing when uniformed officers arrived, it is well-established that the police have no constitutional duty to "intervene" in a physical altercation between apparently private parties because the Constitution does not impose any affirmative duty to protect citizens from violence from each other. *DeShaney*, 489 U.S. at 195-96;

*Sandage v. Bd. of Com'rs of Vanderburgh County*, 548 F.3d 595, 596 (7th Cir. 2008); *Witkowski v. Milwaukee County*, 480 F.3d 511, 512 (7th Cir. 2007)("The bill of rights protects people from the government but does not oblige the government to furnish protection against private violence."). Along these lines, liability on a "failure to intervene" claim requires the officer actually be "informed of the facts that establish a constitutional violation" prior to a duty to intervene arising. *Montano*, 535 F. 3d at 569; *Morfin v. City of East Chicago*, 349 F.3d 989, 1001-02 (7th Cir. 2003). Even assuming that the "Plainclothes Officer Defendants" were, in fact, police officers, plaintiffs do not plead that the MOVING OFFICERS were informed of any such facts in this case and, indeed, plead to the contrary. First Am. Compl. at ¶¶ 29-42. Accordingly, this claim is defective on these grounds as well and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

WHEREFORE, for the reasons set forth above, defendants OFFICER POSTRELKO, OFFICER TORRES, OFFICER CRESPO, OFFICER REPPAS, OFFICER MIDDLETON, OFFICER PODGORNY, and OFFICER SHROEDER pray this Court dismiss plaintiff's First Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

                                                     Respectfully submitted,

                                                     BORKAN & SCAHILL, LTD.

                                                     By:  s/Timothy P. Scahill
                                                          Timothy P. Scahill

Timothy P. Scahill (6287296)
Steven B. Borkan (6193463)
BORKAN & SCAHILL, LTD.
Two First National Plaza
20 South Clark Street
Suite 1700
Chicago, Illinois 60603
(312) 580-1030