**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MATTHEW CLARK and** | ) | |
| **GREGORY MALANDRUCCO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **No.: 10-CV-1803** |
| | ) | |
| **CITY OF CHICAGO, OFFICER BRIAN** | ) | |
| **POSTRELKO, OFFICER MICHAEL TORRES,** | ) | |
| **OFFICER NELSON CRESPO, OFFICER JOHN** | ) | |
| **REPPAS, OFFICER ELISE MIDDLETON,** | ) | |
| **OFFICER RICK PODGORNY, OFFICER** | ) | |
| **DONALD SHROEDER, UNKNOWN** | ) | |
| **PLAINCLOTHES CHICAGO POLICE** | ) | |
| **OFFICERS, and UNKNOWN UNIFORMED** | ) | |
| **CHICAGO POLICE OFFICERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

**A.      Failure to Render Medical Assistance.[1]**

With respect to their "failure to render medical assistance" claim, plaintiffs assert that their claim falls within the *DeShaney* exception relating to circumstances involving "custodial settings in which the state has limited the individual's ability to care for himself." Resp. at 16-18.[2] In plaintiffs' estimation, they were "in custody" and allegedly unable to care for themselves during the exceedingly brief period in which they were actually involved in the underlying physical altercation at issue in this suit. *Id.* Contrary to plaintiffs' statements in their Reponse (*id.* at 17), their Complaint *does not* allege they were taken into custody and, indeed, alleges the *exact opposite*-that they were

---

[1] Plaintiffs spend the first 14 pages of their Response regurgitating the allegations of their First Amended Complaint and discussing general principles of federal pleading. Resp. at 1-14. To the extent these arguments are relevant to the bases for dismissal set forth by the MOVING OFFICERS, the MOVING OFFICERS will address these below.

[2] Citations herein are as follows: Plaintiffs' Response = "Resp. at ___"; Defendants' Motion to Dismiss = "Mot. Dis. at ___."

simply told to go home and were not arrested. *See* First Am. Compl. at ¶¶ 38-39, 43.

The Seventh Circuit and the District Courts have repeatedly found that brief interactions with the police that do not result arrest and an extended period of time in actual police custody fall far short of the requirements necessary to support a finding of a "custodial setting" on which to base a "failure to render medical assistance" claim. *See Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir. 1997); *Riordan v. City of Joliet*, 3 F.Supp.2d 889, 894-95 fn 7 (N.D.Ill. 1998); *Cowgill v. City of Marion*, 127 F.Supp.2d 1047 (N.D. Ind. 2000).

Indeed, the Seventh Circuit discussed the nature and extent of the "custody" required in order to invoke the "custodial setting" exception in *Estate of Stevens*, a case cited by plaintiffs. To wit:

> In this case, the district court, magistrate judge, and the estate assumed, without citation to authority, that Fourth Amendment criminal case law correctly elucidates the phrase "in custody." Given the authority expressly relied upon by the Supreme Court when it recognized this constitutional duty, we are not at all sure this is correct. The Supreme Court's express rationale in *DeShaney* for recognizing a constitutional duty *does not match the circumstances of a simple criminal arrest*: "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs- e.g., food, clothing, shelter, medical care, and reasonable safety-it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.' *Id.*, 105 F.3d at 1174-75 (emphasis added).

Because the "in custody" requirement of this claim requires a far more substantial relationship than a mere Fourth Amendment seizure, brief periods of detention (even if involuntary) do not suffice to establish this requirement for the purposes of a failure to render medical assistance claim. *See e.g. Riordan*, 3 F.Supp.2d at 894-95, fn 7 ("Riordan has not argued that Officers owed him a duty under the "in custody" special relationship identified in *Estate of Stevens*, apparently conceding that his few minutes of confinement in Knowski's police cruiser were too brief to interfere with his ability to care for himself. That restraint is wise, for *DeShaney*, cited *Estelle v. Gamble* (which held that the state was required to provide adequate medical care to incarcerated prisoners) and *Youngberg v. Romeo*, which held that the state had to provide involuntary committed mental patients with the necessary services to ensure their reasonable safety from themselves and others) as examples of a "deprivation of liberty" that triggered substantive due process protections. Thus *DeShaney* was concerned with significantly more intensive and extended custodial deprivations of liberty than are normally encountered during simple criminal arrests."); *Cowgill*, 127 F.Supp.2d at

1052-53("Certainly if the rationale in *DeShaney* does not match the circumstances of a simple arrest and requires more than that a person be placed in the back seat of a police car for more than a few minutes to constitute being "in custody," a police officer's directive that a citizen await questioning cannot constitute 'in custody' for purposes of *DeShaney*."); *Forrester v. Stanley*, 2010 WL 1257471, *3 (M.D.Fla.,2010)("Forrester asserts that a "special relationship" was created when the police ordered him to lie down on the ground, thereby placing Forrester in custody and depriving Forrester of the ability to protect himself. Forrester correctly asserts that by lying down prone on the sidewalk pursuant to police orders, he was "seized" under the Fourth Amendment at the time of the K-9 attack. However, it is not clear that a state actor has an affirmative duty to protect a person from physical harm under the Fourteenth Amendment merely because that person is "seized" as defined in the Fourth Amendment. As noted by the Seventh Circuit Court of Appeals, the Supreme Court's express rationale in DeShaney does not support the conclusion that a criminal arrest, let alone a seizure not amounting to an arrest, constitutes "custody" for which the Fourteenth Amendment duty to protect arises.").

In this regard, plaintiffs' attempt to analogize this case to *Petrovic v. City of Chicago*, 2008 WL 4286954, *7 (N.D. Ill. 2008) falls apart when one actually reads this case. In *Petrovic*, the plaintiff was actually arrested, taken to the police station and held for nine (9) hours at the police station. *Id.* at *3. Plaintiffs' in this case had a brief interaction with the police during their involvement in an alcohol-fueled street fight, were not arrested, and, in fact, were specifically instructed to simply "go home" after the police broke up the altercation. First Am. Compl. at ¶¶ 38-39, 43. Pursuant to unambiguous mandate of the Seventh Circuit, such allegations fall far short of a "custodial setting" within the meaning of *DeShaney*. Accordingly, to the extent that plaintiffs' First Amended Complaint attempts to assert a "failure to render medical assistance" claim, such claim must be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## B.    Failure to Enforce the Law.

Plaintiffs' First Amended Complaint appeared to assert a claim ostensibly based on the failure or refusal of the police to arrest the individuals with whom plaintiffs were involved in the physical altercation. First Am. Compl. at ¶¶ 37-38. Plaintiffs state that they do not intend to pursue such a claim. Resp. at 15, fn. 15. Accordingly, the MOVING OFFICERS pray this Court strike the

allegations in plaintiffs' First Amended Complaint setting forth such allegations pursuant to Fed. R. Civ. P. 12(f)("The court may strike from a pleading...any redundant, imaterial, impertinent, or scandalous matter.").

## C. Excessive Force.[3]

At the outset, despite being directly challenged to do so, plaintiffs do not and cannot allege that any of the MOVING OFFICERS were necessarily personally involved in the alleged used of "excessive force" against them. Resp. at 4-13,15-16, 18-19. Rather, plaintiffs continue to lump in the MOVING OFFICERS as a group with alleged unnamed and unknown "Plainclothes Officer Defendants" and unnamed and unknown other "Uniformed Officer Defendants" in making scattershot allegations that "one or more" of the members of these various independent groups of individuals violated their rights. *Id.*

In this regard, plaintiffs' assertion that they are simply seeking to attribute which of the known, named defendants committed which of the specified acts against plaintiffs (Resp. at 8-9,15-16, 19) is belied by their own Complaint and, indeed, even their own Response. Plaintiffs set forth several different and distinct classes of defendants in this suit, including: (1) the named MOVING OFFICERS; (2) unknown and unnamed "Plainclothes Officer Defendants"; and (3) additional unknown and unnamed "Uniformed Officer Defendants." First Am. Compl. at ¶¶ 2, 32-42, 62; Resp. at 8, 16. Along these lines, plaintiffs repeatedly allege that "one or more of the Defendant Officers" (which includes *all* of these separate classes of defendant) or the "one or more of the Uniformed Officer Defendants" (which includes *both* the MOVING OFFICERS *as well as* other unknown and unnamed "Uniformed Officer Defendants") committed the various alleged acts against them. *Id.*

Simply stated, plaintiffs have not necessarily accused *any* of the MOVING OFFICERS of doing *anything* wrong at all. The Seventh Circuit and the Courts of this District have stated on more than one occasion that a Complaint that does not set forth actual legally actionable conduct by a defendant is subject to dismissal under Fed. R. Civ. P. 12(b)(6). *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)(affirming grant of motion to dismiss; "The behavior Brooks has alleged that the

---

[3] Plaintiffs admit that plaintiff CLARK does not have an excessive force claim against the MOVING OFFICERS. Resp. at 16, n. 7. Accordingly, this claim must be stricken from the First Amended Complaint.

defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing. Without more, Brooks's allegations are too vague to provide notice to defendants of the contours of his § 1983 due process claim."); *Alejo v. Heller*, 328 F.3d 930, 935-36 (7th Cir. 2003)(pleading against unknown defendants insufficient to establish personal involvement against named defendant); *Carter v. Dolan*, 2009 WL 1809917, *3 (N.D. Ill. 2009).

Plaintiffs are forced to concede this proposition as a matter of law. Resp. 12-13. Indeed, plaintiffs specifically admit that "alleging misconduct by John Doe defendants is insufficient to hold a named defendant liable for their misconduct" is "wholly uncontroversial" and that the proposition that "named defendants cannot be held responsible for misconduct attributed to unnamed defendants" is "undisputed." *Id.* This is precisely what plaintiffs' First Amended Complaint attempts to do and, thus, it is "uncontroversial" and "undisputed" that the claims against the MOVING OFFICERS must be dismissed as a matter of law as legally invalid.

In this regard, plaintiffs' citation to *Griffin v. Meagher*, 2009 WL 5174684 (N.D. Ill. 2009) as support for a contrary proposition is puzzling on its face. Resp. at 15-16. This case did not involve a motion brought by a party defendant who had not necessarily been accused of any wrongdoing whatsoever (as in this case). *Id.* Rather, the named defendant (Meagher) had been individually and specifically accused of engaging in specific acts of excessive force against the plaintiff. *Id.* at * 2-3. Defendant Meagher simply argued that the accusations at issue were too facially implausible to satisfy the *Iqbal* standards. *Id.* There was no ambiguity whatsoever regarding whether defendant Meagher was being accused of using excessive force against the plaintiff. *Id.* In this case, the MOVING OFFICERS are quite obviously entitled to actually be accused of specific wrongdoing before they are forced to incur the substantial burdens and stresses of defending a lawsuit as party defendants.

Plaintiffs' citation to *Hill v. City of Chicago*, 2007 WL 1424211 (N.D. Ill. 2007) and *Varvaris v. Delia*, 1996 WL 521287 (N.D. Ill. 1996) are also unavailing. Resp. at 5-7. Both *Hill* and *Varvaris* involved Fed. R. Civ. P. 12(e) motions which sought clarification regarding which "named defendants" committed which specific acts of misconduct alleged in the Complaint. *Hill* at * 8; *Varvaris* at *2. In this case, the MOVING OFFICERS do not move under Rule 12(e) and, as set forth above, plaintiffs' First Amended Complaint does not involve attribution of known misconduct

5

between known named defendants. Rather, the issue is whether plaintiffs can allege that any MOVING OFFICER did anything wrong at all in the first place. At present, plaintiffs have not done so and they obviously must allege some wrongdoing if they seek to proceed against the MOVING OFFICERS as named defendants in this suit.

Stated simply, the MOVING OFFICERS argue the entirely uncontroversial proposition that they are entitled to *actually be accused of doing something illegal* prior to being made a party to a lawsuit and to have such accusations meet the factual basis requirements of Fed. R. Civ. P. 11. If plaintiffs have a good faith factual basis for accusing each of the MOVING OFFICERS of committing specific legal violations, plaintiffs should be required to make such accusations plain and sign a pleading to this effect indicating they have a factual basis for same that is subject to the requirements and penalties of Fed. R. Civ. P. 11.

**2.      Failure to Intervene**

With respect to plaintiffs' "failure to intervene" claim, the MOVING OFFICERS argued: (1) this claim suffers from the same pleading infirmities as the excessive force claim (Mot. Dis. at 8); (2) because a "failure to intervene" claim cannot be premised on a failure to intervene to stop conduct that would not itself constitute a viable constitutional claim, plaintiffs' claims for failure to render medical assistance and failure to enforce the law are legally invalid (Mot. Dis. at 8-9); and (2) that plaintiffs did not allege that the MOVING OFFICERS had any knowledge that the "Plainclothes Officer Defendants" were police officers during the brief period of time that the police allegedly witnessed the physical altercation with these individuals (Mot. Dis. at 9-10).

As to the first position, these issues have been set forth comprehensivley above. *See supra* Part C. Whether the claim is excessive force or "failure to intervene," it is axiomatic that a defendant must actually be accused of wrongdoing in order to be sued. *id.*

As to the second position, plaintiffs do not appear to quarrel with this position as a matter of law but, rather, simply re-assert their belief that they have stated valid underlying legal claims.[4] Accordingly, to the extent that plaintiffs' underlying legal claims are deemed insufficient, it is

---

[4] As noted above, plaintiffs have indicated that they do not seek to proceed on a "failure to enforce the law"-type claim and, thus, any "failure to intervene" to prevent any such non-existent claim must fail as well.

undisputed that plaintiffs' "failure to intervene" claims must be dismissed as well.

As to the third position, plaintiffs admit that their First Amended Complaint does not allege that the MOVING OFFICERS were aware that the "Plainclothes Officer Defendants" were police officers at any time but state that "[t]he clear inference from the Complaint is that the uniformed officers knew that the plainclothes officers were police officers." Resp. at 20. For what its worth, plaintiffs do not explain how one would draw such an "inference" from silence (particularly because plaintiffs state that the arriving police officers never questioned the alleged "plainclothes officers" in the first place and that the only reason they (the plaintiffs) believe these individuals were police officers was the statement of a bystander made *prior to* the arrival of any uniformed officers). First Am. Compl. at ¶¶ 29-42. Plaintiffs' assertion that their allegations that one of the plaintiffs was "lying face down on the ground" when the police arrived and that the police interceded in the ongoing physical altercation somehow provides an inference that the arriving officers knew plaintiffs' alleged assailants were police officers is nonsensical. Neither of these allegations lend themselves to an "inference" of anything other than that the police broke up an ongoing fight between private citizens.

This is not a minor detail. It is the entire basis for the cause of action. Immediate knowledge of the identity of these alleged "plainclothes officers" is integral to the viability of plaintiffs' claims of excessive force because it is obviously not a constitutional violation for a police officer to "fail to intervene" in a physical altercation between private citizens. *DeShaney*, 489 U.S. at 195-96; *Sandage v. Bd. of Com'rs of Vanderburgh County*, 548 F.3d 595, 596 (7th Cir. 2008); *Witkowski v. Milwaukee County*, 480 F.3d 511, 512 (7th Cir. 2007)("The bill of rights protects people from the government but does not oblige the government to furnish protection against private violence."). Thus, without such allegations plaintiffs have alleged acts which are not illegal even if true, which would require dismissal of this claim. *See Brooks*, 578 F.3d at 580.

In this regard, if plaintiffs have a good faith factual basis to allege that the MOVING OFFICERS knew plaintiffs' alleged assailants were police officers despite never having spoken to them, they must make said allegations in their signed pleading (*see Hughley v. Hudgins*, 1997 WL 285889, *3 (N.D. Ill. 1997)) and, more importantly, be prepared to explain to defendants the factual basis for said allegations when requested. At present, this has not occurred and, thus, plaintiffs'

"failure to intervene" claim must be dismissed.

## CONCLUSION

WHEREFORE, for the reasons set forth above, defendants OFFICER POSTRELKO, OFFICER TORRES, OFFICER CRESPO, OFFICER REPPAS, OFFICER MIDDLETON, OFFICER PODGORNY, and OFFICER SHROEDER pray this Court dismiss plaintiffs' First Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:   s/Timothy P. Scahill
              Timothy P. Scahill

Timothy P. Scahill (6287296)
Steven B. Borkan (6193463)
BORKAN & SCAHILL, LTD.
Two First National Plaza
20 South Clark Street
Suite 1700
Chicago, Illinois 60603
(312) 580-1030