**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MATTHEW CLARK, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10 C 1803** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the

reasons stated below, we grant in part and deny in part the motion to dismiss.

## BACKGROUND

On February 6, 2010, Plaintiff Matthew Clark (Clark) and Plaintiff Gregory

Malandrucco (Malandrucco) allegedly stopped at a restaurant named Arturo's Tacos

(Arturo's) to eat. After Plaintiffs finished their meals, Malandrucco allegedly stood

up to leave and encountered two male plainclothes police officers and a female

plainclothes police officer (Plainclothes Officers), who had been dining at Arturo's.

One of the male Plainclothes Officers allegedly shoved Malandrucco because

1

Malandrucco had unintentionally obstructed the Plainclothes Officers' path to the cashier or exit. Malandrucco allegedly told the officer that he was putting on his coat and would get out of the way shortly. When Plaintiffs exited Arturo's, the Plainclothes Officers were allegedly waiting in the parking lot.

According to Plaintiffs, the Plainclothes Officers physically assaulted Plaintiffs in the parking lot. While being beaten, Clark allegedly tried to raise his arms to protect himself, but was told by one of the Plainclothes Officers that they were policemen. Uniformed police officers (Uniformed Officers) then allegedly arrived on the scene. Some of the Uniformed Officers allegedly joined the Plainclothes Officers in beating Malandrucco. Plaintiffs contend that none of the Uniformed Officers attempted to intervene to stop the beating. Plaintiffs also claim that they asked for medical assistance, but that the Uniformed Officers told Plaintiffs that they were not going to help Plaintiffs. The Uniformed Officers then allegedly escorted the Plainclothes Officers to their car and allowed them to leave the scene without getting their names or otherwise questioning the Plainclothes Officers. The Uniformed Officers allegedly told Plaintiffs to go home and then left the scene without calling for any medical assistance for Plaintiffs.

Plaintiffs brought the instant action against the Plainclothes Officers, the Uniformed Officers (collectively referred to as "Individual Defendants"), and the

City of Chicago, and include in their amended complaint claims brought pursuant to 42 U.S.C. § 1983 (Section 1983) alleging excessive force, Section 1983 unlawful seizure claims, Section 1983 failure to provide medical aid claims, Section 1983 failure to intervene claims, a Section 1983 *Monell* claim, assault and battery claims, intentional infliction of emotional distress claims, Section 1983 conspiracy claims, state law conspiracy claims, and an indemnity claim. Defendants now move to dismiss the instant action.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability

. . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

# DISCUSSION

## I. Claims for Failure to Provide Medical Aid

Defendants argue that Plaintiffs have failed to plead facts that can support valid claims for failure to provide medical aid. Defendants contend that such claims have been recognized only in limited instances that are not applicable to the instant action. Defendants also argue that there are no facts that indicate that the Individual Defendants deprived Plaintiffs of an opportunity to seek medical aid themselves.

### A. Substantial Contribution to Increasing Danger

Defendants contend that the facts alleged by Plaintiffs do not indicate that this case fits into the limited instances in which a claim for failure to provide medical aid would be applicable. There is no affirmative right under the Due Process Clauses "to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989); *see also Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996)(stating that "[t]he

government . . . has no affirmative constitutional duty to provide emergency medical services to its citizens"). However, in certain limited instances, "the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *DeShaney*, 489 U.S. at 198. The Seventh Circuit has stated that a plaintiff may state a Section 1983 claim based on a failure to provide medical aid if the plaintiff "allege[s] state action that creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been." *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993).

In the instant action, Plaintiffs allege that the Uniformed Officers arrived at the scene of the altercation between Plaintiffs and the Plainclothes Officers. Plaintiffs contend that the Uniformed Officers failed to intervene to stop the continued beating of Malandrucco and that some of the Uniformed Officers actually assisted the Plainclothes Officers in beating Malandrucco. Plaintiffs also contend that they were severely injured and needed medical attention, but that none of the Individual Defendants made any effort to get Plaintiffs medical attention.

Plaintiffs allege facts that indicate that the Uniformed Officers arrived at the scene and took control of the situation. It is plausible that, with the arrival of the Uniformed Officers, bystanders at Arturo's that might have otherwise sought to assist Plaintiffs, such as by calling for an ambulance, did not do so because they were

5

under the impression that the Uniformed Officers were in control of the situation and addressing Plaintiffs' medical needs. While it is true that claims for failure to provide medical aid only apply in limited circumstances, the allegations in the amended complaint are sufficient to plausibly suggest that Defendants may have substantially contributed to the creation of an increased danger to the safety of Plaintiffs. We note that at the summary judgment stage, Plaintiffs will need to point to sufficient evidence to support such claims, such as evidence that shows that the Individual Defendants' actions substantially contributed to an increased danger to Plaintiffs.

### B. Freedom of Plaintiffs to Seek Medical Aid

Defendants also contend that they cannot be found liable for failing to provide medical aid to Plaintiffs since the Individual Defendants never arrested Plaintiffs or took them into custody. Defendants point out that Plaintiffs themselves allege that all the Individual Defendants ultimately left the scene, leaving Plaintiffs free to go where they pleased and seek medical aid on their own. Plaintiffs allege, however, that the Plainclothes Officers beat Plaintiffs and severely injured Plaintiffs and that the Uniformed Officers participated in the beating of Malandrucco or failed to intervene to stop the beating. In addition, Plaintiffs contend that the Individual

Defendants caused them severe injuries, which makes it plausible that they were unable to seek medical attention on their own. (A Compl. Par. 37). Plaintiffs also contend that the facts are such that the Individual Defendants effectively took Plaintiffs into custody under the law. Defendants disagree and contend that Plaintiffs were not taken into custody. Such an assessment is premature at this juncture and will require an examination of the detailed facts concerning the incident. Also, the extent of Plaintiffs' injuries and the ability of Plaintiffs to seek medical aid on their own at any point are factual issues that can be addressed at the summary judgment stage. Therefore, we deny Defendants' motion to dismiss the failure to provide medical aid claims.

## II.  Claims for Failure to Enforce the Law

Defendants move to dismiss what they deem to be claims in the amended complaint for failure to enforce the law. Defendants contend that Plaintiffs are bringing such claims based on the Uniformed Officers' alleged failure to enforce the law and arrest the Plainclothes Officers. However, Plaintiffs contend that Defendants have misconstrued the amended complaint and that Plaintiffs never intended to bring claims for failure to enforce the law. (Ans. Dis. 15 n.6). Therefore, we deny as moot Defendants' motion to dismiss what Defendants

perceived to be claims for failure to enforce the law.

### III.  Excessive Force Claims

Defendants contend that Plaintiffs have failed to allege sufficient facts to state

claims for excessive force.  Defendants argue that Plaintiffs fail to specify what

misconduct each Individual Defendant engaged in and that Plaintiffs have therefore

failed to give the Individual Defendants notice of what personal involvement they

had in the alleged use of excessive force.  In order to hold an individual liable under

Section 1983, a plaintiff must establish the individual's "'personal involvement in the

alleged constitutional deprivation.'"  *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir.

2010)(quoting  *Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003)).

Defendants contend that Plaintiffs should have alleged the actions of each

Individual Defendant in regard to the alleged use of excessive force.  Defendants

contend that it is too vague to merely assert that all of the Individual Defendants

engaged in excessive force.  Defendants contend that Plaintiffs improperly use vague

phrasing, such as that "one of" or "one or more of" Individual Defendants engaged in

excessive force.  (A Compl. Par. 33-36, 39).  While Plaintiffs are required to allege

sufficient facts to fairly put Defendants on notice of the claims brought against them

and to plausibly suggest a claim, Plaintiffs are not required to provide the detail now

argued by Defendants. It would, as Plaintiffs point out, be virtually impossible for any plaintiff, under the circumstances presented in the instant action, to provide such details at the pleadings stage. Since Plaintiffs contend that they were beaten severely by multiple Defendants, at this juncture, it is not reasonable to expect Plaintiffs to be able to provide a detailed, blow-by-blow recitation of who did what and when. Nor could Plaintiffs be expected to possess such information until after discovery. Although the court has authorized certain limited discovery in this case, the discovery was solely limited to identifying officers that were at the scene and did not extend to identifying what conduct each officer engaged in at the scene. In regard to personal involvement by each Individual Defendant, in the amended complaint Plaintiffs clearly indicate that all of the Individual Defendants allegedly either participated in the actual beatings or stood by and did not stop the beatings and played a role in the alleged conspiracy. We note that at this stage of the proceedings, since we are denying the motion to dismiss, the parties will conduct discovery and the Plaintiffs can continue their discovery with regards to the identity of the Plainclothes Officers. We further note that, the Independent Police Review Authority of the City of Chicago is continuing its investigation as to this incident and has been providing the court with updated information.

    Plaintiffs have alleged more than mere conclusory legal jargon that the

Individual Defendants engaged in "excessive force." Plaintiffs provide a narrative of events and allege, for example, that one Plainclothes Officer punched Clark and began repeatedly striking Clark, causing Clark to fall to the ground. (A Compl. Par. 27). Plaintiffs also allege, for example, that one of the Uniformed Officers kicked or kneed Malandrucco while he was on the ground. (A Compl. Par. 35). Plaintiffs have also given more detail than merely alleging that unknown John Does used excessive force. Plaintiffs have separated the actions of the Individual Defendants into groups of the Uniformed Officers and the Plainclothes Officers. Plaintiffs have also separated the actions of the female Plainclothes Officer and the male Plainclothes Officers.

Defendants, in support of their position that Plaintiffs should have provided more details concerning the specific conduct of each Individual Defendant during the alleged beatings, cite *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009), *Alejo v. Heller*, 328 F.3d 930 (7th Cir. 2003), and *Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008). (Mot. 7-8). However, those cases were not actions dismissed because a plaintiff allegedly subjected to excessive force by law enforcement failed to provide specific details concerning the actions of each officer. The statements Defendants rely upon in those cases are taken out of context.

Defendants contend that, in *Brooks*, the Seventh Circuit ruled that the district

10

court properly dismissed the plaintiff's claims because the plaintiff used "vague phrasing, which d[id] not adequately connect specific defendants to illegal acts." 578 F.3d at 580. In *Brooks,* the case did not involve excessive force. Instead, the plaintiff was a former prison review board member that was bringing Section 1983 claims against state employees, including police officers, relating to an investigation into official misconduct by the plaintiff. 578 F.3d 577-78. The Seventh Circuit noted in *Brooks* that the plaintiff alleged that the defendant officers "engaged in a variety of activities," such as producing investigative reports and being present at and assisting in interviews. *Id.* at 581-82. The court concluded that the "behavior [the plaintiff] ha[d] alleged that the defendants engaged in [wa]s just as consistent with lawful conduct as it [wa]s with wrongdoing" and "[w]ithout more, [the plaintiff's] allegations [were] too vague to provide notice to defendants of the contours of [the] § 1983 due process claim." *Id.* In the instant action, Plaintiffs have presented more than vague allegations. Plaintiffs have given factual details concerning the alleged physical attacks and have even broken the Individual Defendants down into two known groups. Also, unlike in *Brooks*, Plaintiffs have not alleged conduct by the Individual Defendants that is consistent with lawful conduct. According to the allegations in the amended complaint, all of the Individual Defendants either engaged in the physical attacks on Plaintiffs, assisted in the attacks, or stood by and failed to

11

intervene to stop the attacks.  Each of those categories references conduct for which the Individual Defendants potentially could be held liable under Section 1983.  Thus, the instant action is distinguishable from *Brooks*.

In *Alejo*, the plaintiff was not alleging excessive force by law enforcement. The plaintiff in *Alejo* brought a Section 1983 action against prison personnel and officials relating to alleged violations of the plaintiff's due process rights.  In *Alejo*, the Court noted that the plaintiff did not allege that one of the defendants "personally participated in or caused any allegedly unconstitutional action."  328 F.3d at 936. The Court in *Alejo* also noted that the plaintiff failed to specifically reference in his complaint any personal interaction with the defendant.  *Id.*  In the instant action, unlike in *Alejo*, Plaintiffs allege that all the Individual Defendants were present at the scene and were either directly involved in the use of excessive force or failed to intervene to stop the use of excessive force.  Thus, the instant action is distinguishable from *Alejo*.

In *Grieveson*, the case did not involve excessive force.  The plaintiff brought an action against jail personnel relating to inadequate medical care he allegedly received in jail.  538 F.3d at 768.  The court in *Grieveson* noted that the plaintiff in affidavits referred merely to "'the defendants,' claiming that 'the defendants' failed to protect him."  *Id.* at 778.  Defendants cite *Grieveson* for the proposition that

"[v]ague references to a group of 'defendants' without specific allegations tying the incident defendants to the alleged unconstitutional conduct" will not be sufficient for a plaintiff to prevail in a Section 1983 action. *Id.*; (Mot. 8). However, in making such a statement, the court in *Grieveson*,, was not considering the federal pleading standard or a motion to dismiss. The court was actually considering a ruling by the district court on a summary judgment motion and was commenting on affidavits that were provided by the plaintiff in opposition to the summary judgment motion. *Id.* at 778. The court stated in full that the "[v]ague references to a group of 'defendants'" did "not raise a genuine issue of material fact with respect to those defendants." *Id.* Thus, in the instant action, where Defendants are seeking to dismiss the action at the pleadings stage, the court is presented with a different procedural posture than the Court in *Grieveson*.

We also note that in *Hessel v. O'Hearn*, 977 F.2d 299 (7th Cir. 1992), the Seventh Circuit addressed a situation where the plaintiffs claimed that police officers stole cash and personal items from the plaintiffs during searches of plaintiffs' businesses and the plaintiffs were unable to point to evidence indicating which officer or officers of the group present at the searches stole the cash and items. *Id.* at 304-05. The Court held that the plaintiff could not rely on a "principle of collective punishment as the sole possible basis of liability . . . ." *Id.* at 305. However, the

13

court in *Hessel* was addressing whether there was sufficient evidence at the summary judgment stage to tie specific defendants to specific misconduct, not, as in the instant action, whether the Plaintiffs' complaint contained sufficient allegations to state a claim. *Id.* at 301.

In the instant action, Plaintiffs have provided sufficient details concerning the alleged use of excessive force to provide the Individual Defendants with adequate notice of the claims being brought against them. Plaintiffs' complaint sufficiently alleges that each of the Individual Defendants participated in the alleged acts in a certain capacity, even though at this stage, the specific acts of some of the officers have not yet been discovered. Under the facts of this case, at the pleadings stage, the Individual Defendants need not be provided with notice of every alleged act that each Individual Defendant committed. Plaintiffs have pled sufficient facts to state excessive force claims against all Individual Defendants.

### C.  Excessive Force Claims Brought by Clark

Defendants contend that Clark has failed to state claims against the Uniformed Officers for excessive force, since Plaintiffs allege that the Uniformed Officers arrived after excessive force was used on Clark. Plaintiffs indicate in the amended complaint that the beating of Malandrucco continued after the Uniformed Officers

14

arrived at the scene.  There are no allegations indicating further force was used on

Clark after the arrival of the Uniformed Officers.  Plaintiffs, in fact, concede that

Clark has failed to state a valid claim against the Uniformed Officers for excessive

force.  (Ans. 16 n.7).  Therefore, we grant Defendants' motion to dismiss the

excessive force claims brought by Clark against the Uniformed Officers and deny the

motion to dismiss the remaining excessive force claims.


IV.  Claims for Failure to Intervene

Defendants contend that Plaintiffs have failed to allege sufficient facts to state

claims for failure to intervene.  Defendants also contend that the facts alleged in the

amended complaint do not suggest that Defendants improperly failed to intervene in

the incident.  For a Section 1983 failure to intervene claim, a plaintiff must show that

"[a]n officer who [w]as present and fail[ed] to intervene to prevent other law

enforcement officers from infringing the constitutional rights of citizens. . . had

reason to know: (1) that excessive force was being used, (2) that a citizen has been

unjustifiably arrested, or (3) that any constitutional violation has been committed by

a law enforcement official; *and* the officer had a realistic opportunity to intervene to

prevent the harm from occurring."  *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994);

*see also Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009)(stating that "[e]ven as a

bystander, however, [an officer] can be held liable under § 1983 if [the plaintff]

Lewis can show that [the officer] (1) had reason to know that a fellow officer was

using excessive force or committing a constitutional violation, and (2) had a realistic

opportunity to intervene to prevent the act from occurring").


A.  Sufficiency of Facts

Defendants argue, as they do in regard to the excessive force claims, that

Plaintiffs have not set forth a recitation of actions and inactions by specific officers.

Defendants contend that the references to "one or more" of Defendants or to

"Defendant Officers" are too vague.  However, as explained above in regard to the

excessive force claims, Plaintiffs are not required to present at the pleadings stage the

detailed facts sought by Defendants.  Plaintiffs have shown that they are making

efforts to identify all of the officers, whether uniformed or plainclothes, present at the

incident who allegedly violated their rights.  Plaintiffs have alleged that none of the

Uniformed Officers intervened to stop the beatings and, in fact, some of them joined

in the beatings.  Thus, Plaintiffs have pled sufficient facts to support their claims for

failure to intervene.

## B.  Timing of Arrival of Uniformed Officers

Defendants also argue that, according to Plaintiffs the "beating took place almost exclusively prior to the arrival of uniformed officers. . . ." (Mot. 9). Defendants argue that "any 'failure to intervene' claim based on plaintiffs' alleged beating prior to the arrival of any uniformed officers is defective on these grounds alone." (Mot. 9).  However, Plaintiffs clearly allege in their amended complaint that the beating of Malandrucco continued after the Uniformed Officers arrived at the scene. (A Compl. Par. 34-35).  Thus, claims for failure to intervene based on the events that occurred after the Uniformed Officers arrived are appropriate, and the fact that more of the beatings may have occurred prior to the arrival of the Uniformed Officers is not relevant as to whether a valid claim has been pled.  Also, to the extent that Defendants contend that there was not sufficient time after the arrival of the Uniformed Officers to reasonably intervene before the beatings ceased, those are evidentiary points that the Uniformed Officers can raise at the summary judgment stage.

## C.  Knowledge that Plainclothes Officers were Officers

Defendants argue that Plaintiffs have failed to plead valid claims for failure to intervene since there are no facts in the amended complaint that would suggest that

the Uniformed Officers knew that the Plainclothes Officers were police officers.

Defendants contend that the Uniformed Officers cannot be held liable for failing to

intervene in an apparent dispute between private individuals. *See Yang*, 37 F.3d at

285 (explaining that a failure to intervene claim is premised on an officer's failure

"to intervene to prevent other law enforcement officers from infringing the

constitutional rights of citizens"). Defendants would be correct if Plaintiffs had

alleged merely that the Uniformed Officers arrived at the scene and did nothing to

stop the altercation. Plaintiffs allege, however, that the Uniformed Officers arrived

at the scene and either proceeded to participate in the beatings or declined to stop the

continued beating. The Uniformed Officers then allegedly escorted the Plainclothes

Officers to their vehicle and allowed the Plainclothes Officers to leave the scene. For

the purposes of the instant motion, we must accept Plaintiffs' allegations as true.

*Thompson*, 300 F.3d at 753. It is plausible, based on the facts alleged in the amended

complaint, that the Uniformed Officers discovered either before arriving or upon

arriving at the scene that the Plainclothes Officers were police officers. It is not

plausible that the Uniformed Officers would arrive at the scene of an altercation,

proceed to participate with unknown private citizens in the beating of other private

citizens, and then allow the private citizens to leave. Thus, based on the above,

Plaintiffs have stated valid claims for failure to intervene, and we deny the motion to

dismiss the claims for failure to intervene.

## CONCLUSION

Based on the foregoing analysis, we grant in part and deny in part Defendants'

motion to dismiss.


Samuel Der-Yeghiayan
United States District Court Judge


Dated:   November 17, 2010