UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| MATTHEW CLARK and | ) | | |
| GREGORY MALANDRUCCO, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| vs. | ) | No.: | 10-CV-1803 |
| | ) | | |
| CITY OF CHICAGO, OFFICER BRIAN | ) | | |
| POSTRELKO, OFFICER MICHAEL TORRES,) | | | |
| OFFICER NELSON CRESPO, | ) | | |
| UNKNOWN PLAINCLOTHES CHICAGO | ) | | |
| POLICE OFFICERS | ) | | |
| | ) | | |
| Defendants. | ) | | |

**DEFENDANTS POSTRELKO, TORRES, AND CRESPO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

NOW COME defendants, OFFICER BRIAN POSTRELKO, OFFICER MICHAEL TORRES, and OFFICER NELSON CRESPO, by and through their attorneys, Timothy P. Scahill, Steven B. Borkan and Misha Itchhaporia of BORKAN & SCAHILL, LTD., and submit this Memorandum of Law in Support of their Motion for Summary Judgment. In support thereof, defendants state as follows:

**BACKGROUND**

In the early morning hours of February 7, 2010, plaintiffs, Matthew Clark ("plaintiff Clark") and Gregory Malandrucco ("plaintiff Malandrucco"), after a night out drinking, were involved in a physical altercation with two men in the parking lot outside of Arturo's Tacos, a late night eatery located at 2001 N. Western Avenue, Chicago, Illinois. SMF at ¶¶ 3-21.

Chicago Police Officers Brian Postrelko, Michael Torres, and Nelson Crespo were passing through the vicinity of Arturo's Tacos in a marked squad car. *Id*. at ¶ 22. As the defendant officers

neared Arturo's, Officer Crespo noticed what appeared to be an individual on the ground in the parking lot and, accordingly, turned the squad car into this parking lot to investigate further. *Id.* The officers exited their vehicle and noticed a white male kneeling next to an individual (now known as plaintiff Malandrucco) and holding him on the ground. *Id.* at ¶¶ 24-25.

An individual (now known as plaintiff Clark) was also sitting on the ground nearby. *Id.* at ¶ 23, 25. No one was in physical contact with plaintiff Clark after the officers arrived at any time. *Id.* at ¶ 37, 34; *see also* Ex. 7.

Officer Torres and Officer Postrelko directed the unknown white male to remove his hands from Malandrucco and told him to move away. *Id.* at ¶ 26. This individual stated to the officers that if he let go of plaintiff Malandrucco that he (Malandrucco) would attack him. *Id.* at ¶ 27. The officers again directed the unknown white male to move away from plaintiff Malandrucco and the unknown white male complied.. *Id.* at ¶ 28. Officer Postrelko directed plaintiff Malandrucco to remain on the ground. *Id.* at ¶ 29. However, plaintiff Malandrucco did not comply with this verbal command and began attempting to get up off the ground. *Id.* at ¶ 30.

Believing that plaintiff Malandrucco was attempting to continue the physical altercation, Officer Postrelko physically engaged plaintiff Malandrucco and rolled him onto his back on the ground. *Id.* at ¶ 31. The entirety of the force used by Officer Postelko to subdue the noncompliant plaintiff Malandrucco is captured on a video from a camera positioned several feet away above a doorway in the alley behind Arturo's. *Id.* at ¶ 32. Neither Officer Torres nor Officer Crespo ever touched either plaintiff. *Id.* at ¶ 34.

During several minutes that the police were on the scene, plaintiffs on the one hand and the unknown individuals on the other blamed the other side for starting the physical altercation. SMF at ¶ 35. Neither plaintiff Malandrucco nor plaintiff Clark were arrested nor physically restrained by

the officers in any way. *Id.* at ¶ 36, 38. Indeed, according to both plaintiffs, they were expressly instructed to simply go home. *Id.* at ¶ 36. Shortly thereafter, the officers left the scene. *Id.* at ¶ 37. The entire interaction between plaintiffs and the defendant officer lasted approximately 4-6 minutes. *Id.* at ¶¶ 38-39.

After the defendant officers departed, plaintiff Clark and plaintiff Malandrucco also left the scene. *Id.* at ¶¶ 40-43. After leaving Arturo's in plaintiff Clark's vehicle, plaintiff Clark and plaintiff Malandrucco did not go to the hospital but, rather, went to plaintiff Clark's home. *Id.* After arriving at plaintiff Clark's home, plaintiffs called the police. *Id.* at ¶ 44. Plaintiffs did not request medical assistance or an ambulance during this call but, rather, complained that the police had not arrested the unknown individuals involved in the physical altercation. *Id.* at ¶ 45. Several minutes later, Sergeant David Fox arrived at plaintiff Clark's residence. *Id.* at ¶ 46. Sergeant Fox suggested plaintiffs go to a hospital and plaintiffs agreed to go. *Id.* at ¶ 47.

An ambulance arrived at plaintiff Clark's home shortly thereafter. *Id.* at ¶¶ 49-50. Paramedics treated plaintiff Clark in the ambulance and both plaintiffs received medical treatment at the hospital several minutes later. *Id.* at ¶¶ 51. Neither plaintiffs' injuries were worsened or exacerbated by this brief delay in any way. *Id.* at ¶¶ 52-54.

Plaintiffs allege claims for failure to provide medical care, excessive force, failure to intervene, unlawful seizure and conspiracy to violate the plaintiffs' constitutional rights against Officers Postrelko, Torres, and Crespo. Plaintiffs also bring supplemental state claims against these officers for assault, battery and intentional infliction of emotional distress. For the reasons set forth below, Officers Postrelko, Torres, and Crespo are entitled to summary judgment on all claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 2552 (1986). To determine whether there is a genuine issue of material fact, courts construe the factual record in the light most favorable to the non-movant and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If it is clear, based upon the undisputed facts, that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only proper, but mandated. *See Celotex*, 477 U.S. at 322; *Padula v Leimback*, 656 F.3d 595, 600-501 (7th Cir. 2011).

## ARGUMENT

## I. FAILURE TO RENDER MEDICAL ASSISTANCE.

The Constitution generally confers no "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County. Dept. of Social Services*, 489 U.S. 189, (1989); *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir. 1997). There are two narrow exceptions to this axiom where the state may have a limited duty to render medical aid: (1) custodial settings in which the state has limited the individual's ability to care for himself; and (2) when the state affirmatively places the individual in a position of danger the individual would not otherwise have faced and thereby renders them more vulnerable to a subsequent injury or harm. *Deshaney*, 489 U.S. at 199-202.

### A. Plaintiffs' Have Elected Not to Pursue the "State Created Danger" Exception.

Plaintiffs have explicitly indicated that they are not pursuing a failure to provide medical aid claim based on the state created danger exception. *See* Plaintiffs' Response to Defendants Motion

to Dismiss, Docket No. 36 at 18 ("The cases cited by Defendants regarding failure to provide medical assistance all address a state-created danger theory of liability, which are inapplicable because Plaintiffs do not allege that theory against defendants here."). This election is binding for the purposes of this Motion and this case. *See Pierce v. City of Chicago*, 2012 WL 401026, *3-4 (N.D. Ill. 2012); *Keller v. U.S.*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995).

**B.    There Is No Evidence That The Plaintiffs Were In Custody To The Extent Required Under *DeShaney* and Its Progeny.**

The "custody exception" does not apply because there is no evidence that the plaintiffs were in custody to the extent required by *DeShaney* and its progeny. The "government generally has no constitutional duty to provide rescue services...to people not in its custody." *Salazar v. City of Chicago*, 940 F.2d 233, 237 (7th Cir. 1991). However, the Constitution may "demand protection if the state disables people from protecting themselves; having rendered someone helpless, the state must supply the sort of defenses that the person could have provided on his own." *Witkowski v. Milwaukee County*, 480 F.3d 511, 513 (7th Cir. 2007). "[T]hat is, when a state has custody over a person, it must protect him because no alternate avenues of aid exist." *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir 2009) *citing Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998) ("The basis of a special relationship is that the state has some sort of control or custody over the individual, as in the case of prisoners, involuntarily committed mentally ill persons, or foster children."); *Kitzman-Kelley v. Warner*, 203 F.3d 454, 458 (7th Cir. 2000). The "custody exception" triggers a constitutional duty to provide adequate medical care to incarcerated prisoners, those involuntarily committed to mental institutions, foster children, pretrial detainees, and those under "other similar restraint of personal liberty." *Deshaney*, 489 U.S. at 200.

However, when the government "does not monopolize the avenues of relief ... it has no further obligation to give aid." *Archie v. City of Racine*, 847 F.2d 1211, 1222 (7th Cir. 1988).

"Inaction by the state in the face of a known danger is not enough to trigger the obligation; according to *Deshaney*, the state must have limited in some way the liberty of a citizen to act on his own behalf." *Reed v. Garner*, 986 F.2d 1122, 1125 (7th Cir. 1993) *citing Deshaney*, 489 U.S. at 200. The affirmative act of restraining an individual's freedom to act on his own behalf through incarceration, institutionalization or other similar restraint of personal liberty constitutes a deprivation of liberty triggering a constitutional duty to provide medical care. *Id.* Thus, the proper custody inquiry is whether the defendant officers engaged in a "restraint of personal liberty" similar to the restraints mentioned in *Deshaney*, 489 U.S. at 200. *Doe v. Village of Arlington Heights*, 2012 WL 106878, * 8 (N.D. Ill. 2012).

In this case, there is no evidence that the defendant officers placed the plaintiffs "in custody" or anything remotely similar to custody. Accepting all the facts in the light most favorable to the plaintiffs, the legal result is clear: the plaintiffs were not incarcerated, institutionalized, arrested, charged with a crime or put under similar restraints as mentioned in *Deshaney*. Plaintiffs were not handcuffed, placed in a squad car, brought to the police station and placed in a cell, or even told they could not leave the scene. SMF at ¶ 35-36. To the contrary, the evidence establishes that the defendant officers actively encouraged the plaintiffs to leave the scene and go home, and did not hinder them from seeking other sources of aid. *Id.* at ¶¶ 35, 36, 39. The plaintiffs were free to call for an ambulance (as evidenced by Clark's numerous calls to 911) drive to the hospital or flag a cab to take them to the hospital. *Id.* at ¶¶ 35-43. As such, the defendant officers did not cut off any of the plaintiffs' avenues of aid or interfere with their ability to care for themselves. Based on the record, there is no constitutional violation under *Deshaney*'s "in custody" exception and the defendant officers are entitled to summary judgment.

There is no evidence that the defendant officers placed the plaintiffs "in custody" when they questioned the plaintiffs in the parking lot in order to investigate the situation and separate the

plaintiffs from their alleged assailants. Even Officer Postrelko's brief restraint of plaintiff Malandrucco did not amount to a constitutional deprivation of Malandrucco's liberty to invoke a duty to provide medical care under the "in custody" exception under *Deshaney*. *See Estate of Stevens v. City of Green Bay*, 105 F.3d 1169 (7th Cir. 1997)(finding that *Deshaney's* "in custody" concept does not extend to a person that is placed in the back seat of a police car for more than few minutes); *Losinski v. County of Trempealeau*, 946 F.2d 544, 550 (7th Cir. 1991)(refusing to extend *Deshaney* to circumstances involving protective escort by Sheriff's deputy); *Magee v. City of Gary*, 2007 WL 4198278 (N.D.Ind. 2007)(summary judgment on failure to render medical assistance claim based upon officers handcuffing and restraining plaintiff); *Estate of Konerak Sinthasomphone v. City of Milwaukee*, 838 F.Supp. 1320, 1327 (E.D.Wis. 1993)(stating that not every person the police usher from one place to another is in custody or a special relationship with them); *Cowgill v City of Marion*, 127 F.Supp.2d 1047,1053 (N.D.Ind. 2000)(finding that a police officer's directive that a citizen await questioning cannot constitute "in custody" for purposes of *Deshaney* as it does not restrain an individual's liberty so that it renders him unable to care for himself); *Murray v. Anderson*, 1992 WL 188425 * 3 (N.D.Ill.,1992)(finding that the plaintiff's allegations did not trigger the officer's duty to provide medical care even though the plaintiff alleged that the officer transported the intoxicated and unconscious decedent to another neighboring county as this only amounted to protective or temporary custody).

Applying the principles of the above cases, the facts in the record here fall far short of showing that the plaintiffs were "in custody" at any time during their interaction with the defendant officers. Although it is undisputed that the defendant officers spoke to the plaintiffs in the parking lot and that Officer Postrelko briefly prevented plaintiff Malandrucco from getting up off the ground, these interactions between the defendant officers and the plaintiffs never rose to the level of a custodial setting. SMF at ¶¶ 29-38. The brief exchange between the defendant officers and the

plaintiffs, which at most lasted a matter of several minutes, did not limit the plaintiffs' physical liberty to the extent required under *DeShaney* or transform the defendant officers into caretakers, such as a prison guard who is responsible for providing medical care to inmates. The defendant officers did not interfere with the plaintiffs' ability to care for themselves or render them helpless. Any other result would be inconsistent with *DeShaney* because *Deshaney* is concerned with extended custodial deprivations of liberty than are normally encountered during simple criminal arrests. *Estate of Stevens*, 105 F.3d at 1174-1175.

Any argument that the plaintiffs were not free to leave is unreasonable and unsupported by the record considering that the defendant officers repeatedly told the plaintiffs to go home. SMF at ¶ 36. Further, the defendant officers did not handcuff the plaintiffs, give them their Miranda rights or indicate to the plaintiffs that they were under arrest. *Id*. at ¶ 38. By the plaintiffs' own admissions, they were capable of seeking medical assistance on their own, and in fact, they obtained said medical assistance on their own after leaving the scene. *Id*. at ¶¶ 39-51. The undisputed facts establish that the plaintiffs were not in custody in the Arturo's Tacos parking lot. As such, the defendant officers had no affirmative duty to provide medical care to the plaintiffs.

In short, because the interaction between the defendant officers and plaintiffs is nowhere near sufficient to rise to the level of a custodial relationship under *DeShaney* and its progeny, plaintiffs' failure to render medical assistance claim fails on this ground alone.

**C.** **There Is No Evidence That the Plaintiffs Suffered Any Injury Caused by the Failure to Provide Medical Care.**

Even assuming *arguendo* that the defendant officers' took the plaintiffs into custody to the extent required by *DeShaney*, there is no evidence that the plaintiffs suffered any injury as a result of any delay in medical attention. Accordingly, summary judgment is required on this ground as well.

In delay of medical care cases, a plaintiff must produce "verifying medical evidence" to show

that he was actually harmed by any delay. *Langston v. Peters*, 100 F.3d 1235, 1240-1241 (7th Cir. 1996); *Estate of Stevens*, 105 F. 3d at 1177; *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009)(state's conduct must be the proximate cause of plaintiff's injury). A plaintiff who is denied medical assistance but suffers no worsening or exacerbation of any condition cannot establish a viable constitutional claim. *Id.*; *see also Moore v. Monahan*, 2009 WL 310963, *4-5 (N.D. Ill. 2009)(2-3 hours delay in receiving treatment without evidence of harm caused by such delay was inactionable); *Nelson v. Stover*, 2004 WL 726133, (N.D. Ill. 2004)(delay of 30 hours between when plaintiff taken into custody and when he received medical treatment for hypodermic needle broken off in plaintiff's groin because no harm caused by delay); *Napier v. Madison County, Ky.*, 238 F.3d 739, 742-44 (6th Cir. 2001)(affirming granting of summary judgment on failure to render medical assistance claim because plaintiff could not show actual harm caused by delay or deprivation); *Cox v. Jackson*, 579 F.Supp.2d 831, 847 (E.D. Mich. 2008)(granting summary judgment on failure to render medical assistance claim because "plaintiff has not alleged any injury or harm arising from the delay"); *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985)(delay not actionable unless it causes actual harm).

In this case, there is no evidence whatsoever that plaintiffs suffered any subsequent injury or exacerbation of any injuries because of the brief delay in seeking medical treatment. SMF at ¶¶ 51-54. Indeed, the only evidence is this case is that there was no such harm. As there is no evidence that a delay in treatment exacerbated the plaintiffs' medical condition or that the plaintiffs actually suffered any harm as a result of a delay in medical treatment, the defendant officers are entitled to summary judgment as a matter of law on these grounds as well.

## II.     EXCESSIVE FORCE.

The entirety of the "force" used on plaintiffs in this case consists of Officer Postrelko rolling a non-compliant plaintiff Malandrucco onto his back in order to prevent further violence from

breaking out. SMF at ¶¶ 29-33. Because this entire use of force is captured on a video, this Court may determine whether the force used was Constitutionally "excessive" as a matter of law. For the reasons set forth below, summary judgment is required on this claim as well.

When a video exists depicting a use of force or other event, a Court may determine as a matter of law whether the force depicted thereon is Constitutionally reasonable as a matter of law. *Scott v. Harris*, 550 U.S. 372, 380 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). In so doing, the Court may disregard any testimony or other evidence inconsistent with the depiction captured on said video. *Id.* at 378-81 (where a videotape exists and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened[,]" a court must view "the facts in the light depicted by the videotape.").

In applying this precedent, courts have routinely granted summary judgment on excessive force claims where a video of force exists notwithstanding disputes in the testimony of the involved parties. *See Dean v. City of South Bend*, 2012 WL 1158730, *5 (N.D. Ind. 2012)(granting summary judgment on excessive force claim despite conflicting testimony from plaintiff; "In light of the content on the video surveillance tape, there is no genuine issue of material fact as to the objective reasonableness of Officer Morgan's actions."); *Pashova v. Geist*, 2012 WL 1074072, *7-13 (N.D. Ind. 2012)(same); *Leiter v. Bumbaugh*, 2012 WL 33021, *5-7 (N.D. Ind. 2012); *Williams v. York*, 2010 WL 3946524, *7 (N.D. Ind. 2010)("In light of the video, no reasonable jury could conclude that the defendants used excessive force against Mr. Williams. The defendants are entitled to summary judgment on the excessive force claim."); *White v. Briley*, 2008 WL 4425437, *5-6 (N.D. Ill. 2008)(same); *Marion v. City of Corydon, Ind.*, 2008 WL 763211, *6 (S.D. Ind. 2008)(same);

*Whitfield v. Walker*, 2007 WL 2769658, *5 (C.D. Ill. 2007)(same).

A Fourth Amendment violation for excessive force occurs when an officer uses force that is not objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). To determine whether or not the force used was objectively reasonable, a court must balance the "'nature and quality of intrusion of the individual's Fourth Amendment interest against a counter veiling governmental interest at stake.'" *Graham*, 490 U.S. at 395-96 (*quoting Tennessee v. Gardner*, 471 U.S. 1, 8 (1985)). The right of a law enforcement officer to perform police functions "reasonably carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. The circumstances considered must be circumstances confronting the officer at the time of the incident and not "be 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. As *Graham* explained:

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. A calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation. *Id.* at 397.

Judges, rather than juries, determine what limits the Constitution places on official conduct for purposes of a Section 1983 claim alleging the excessive use of force. *Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003). Inquiry into whether or not excessive force was used requires the Court to determine whether the police officer's actions were objectively reasonable, in light of facts and circumstances confronting them, without regard to their underlying content for motivation. *Trout v. Frega*, 926 F. Supp. 117, 122 (N.D. Ill. 1996); *see also Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 593 (7th Cir. 1997)(finding that the police officers did not cause a constitutional deprivation of rights by restraining an individual in a face-down position by applying physical pressure to his back, when the individual was struggling with the officers and considered a safety

threat to them); *Duran v. Sirgedas*, 240 Fed.Appx. 104, 119 (7th Cir. 2011)(holding that it was reasonable for officer to strike one of the plaintiffs with an asp and his fists while attempting to subdue and arrest him when the plaintiff admitted that he struggled with police); *Smith v. Ball State Univ.*, 295 F.3d 763 (7th Cir. 2002) (finding that the officers did not use excessive force in removing a student from a vehicle, tackling and handcuffing him.).

In this case, the video evidence shows that Postrelko's actions in using a minor degree of force were objectively reasonable under the circumstances. The officers were responding to an apparent "in progress" physical altercation. SMF at ¶¶ 21-32. They were informed that plaintiff Malandrucco had attacked individuals and was acting violently. *Id.* at ¶¶ 25, 27, 35 The individual holding plaintiff Malandrucco on the ground told the officers that plaintiff Malandrucco would attack if he let go of him. *Id.* at ¶ 27. Plaintiff Malandrucco was, accordingly, ordered to remain on the ground. *Id.* at ¶ 29. Plaintiff Malandrucco did not comply with this command and began to attempt to get up off the ground. *Id.* at ¶ 30. Accordingly, to prevent any further outbreak of violence, Officer Postrelko was required to quickly react to keep the peace. *Id.* at ¶¶ 31-33. The force used was reasonable and ceased immediately after plaintiff Malandrucco was rolled onto his back. *Id.* Indeed, the force used lasted for a total of a few brief seconds. *Id.*

To this end, innumerable examples exist of summary judgment being granted in cases where the force used was *far greater* than shown on the video in this case. *See Catlin v. City of Wheaton*, 574 F.3d 361, 367-68 (7th Cir. 2009)(district court properly granted summary judgment on excessive force claim premised on officer tackling plaintiff, placing knee in back, and handcuffing him); *Smith*, 295 F.3d 763(summary judgment on excessive force claim arising from police officers' use of arm bar to extract plaintiff from vehicle and attempt to "knee strike"); *Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir.2000)(summary judgment on excessive force claim premised on police officer grabbing plaintiff from behind by the shoulder and wrist, throwing him against a van, kneeing him

in the back and pushing his head into the side of the van, searching his groin area in an uncomfortable manner, and handcuffing him and concluding these "sound little different from the minimal amount of force and injury involved in a typical arrest."); *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir.2000)(summary judgment on excessive force claim despite officers' pulling citizen from vehicle and slamming him on hood of car pursuant to arrest for minor traffic violation that plaintiff denied committing; "[T]he officers' use of force here was not high, let alone excessive."); *DeWalt v. Carter*, 224 F.3d 607, 619-20 (7th Cir. 2000)(officer shoving plaintiff into doorframe causing bruising was *de minimus* use of force); *Peterson v. Meris*, 2011 WL 3203675, *3 (N.D.Ill. 2011)(summary judgment on excessive force claim based on police officer grabbing arrestee by the neck several times and pushing her against the wall and calling plaintiff derogatory names despite plaintiff making no threatening gestures or movements of any sort toward officer; and finding that "no reasonable jury could conclude that the force used by [the defendant officer] was anything more than de minimis"); *Beshears v. Winters*, 2011 WL 165188, * 7 (C.D.Ill. 2011)(finding the correctional officers' use of an arm bar control technique and a take-down maneuver was *de minimis*); *Lichtsinn v. Hile*, 2007 WL 3203066 (N.D. Ind. 2007)(summary judgment on excessive force claim premised on officer grabbing plaintiff by his amputated arm and spinning him around); *Simpson v. McDonough County Sheriff*, 2006 WL 842373, *3-4 (C.D. Ill. 2006)(summary judgment on arrestee's excessive force claim based on officer handcuffing arrestee who complained he had a bad right shoulder).

The use of minimal force by Officer Postrelko in this case is nowhere near the Constitutional threshold for excessive force. Accordingly, Officer Postrelko is entitled to summary judgment on plaintiff Malandrucco's excessive force claims.

13

III.     **FAILURE TO INTERVENE.**

Plaintiffs' claims for failure to intervene are legally deficient as well. First, insofar as there is no underlying Constitutional violation on which the officers were required to "intervene," plaintiffs' "failure to intervene" claims fail on these grounds alone. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir.2005)("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation.").

Second, to establish a Section 1983 failure to intervene claim, a plaintiff must show that "[a]n officer who [w]as present and fail[ed] to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens...had reason to know: (1) that excessive force was being used and (2) the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Plaintiffs must raise facts establishing all of the above elements for each individual defendant officer before any such officer may be held liable. *See Hildebrandt v. Illinois Dep't of Natural Res.*, 347 F. 3d 1014, 1039 (7th Cir. 2003) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."); *see also Wilson v. Northcutt*, 441F.3d 586, 591 (8th Cir. 2006)("Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed.").

At the outset, none of the officers can be sued for failing to intervene in the physical altercation between plaintiffs and the unknown males since this altercation occurred prior to their arrival on the scene. Police officers obviously cannot unconstitutionally "fail to intervene" in events that occur prior to their arrival. *Yang*, 37 F.3d at 285; *see also Hughley v. Hudgins*, 1997 WL 285889, *3 (N.D. Ill. 1997)(dismissing failure to intervene claim where plaintiff "failed to state any specific facts giving rise to an inference that defendant officers knew of perpetrating officer's actions

14

or to an inference that defendant officers had a realistic opportunity to intervene to prevent the harm; conclusory allegations insufficient).

Based on Clark's own admissions he was assaulted prior to the arrival of any defendant officer on the scene. SMF at ¶ 23. Indeed, Clark admits that when the defendant officers arrived, no one was physical touching him and that there was no opportunity for the defendant officers to prevent the assault because it was over when they arrived. *Id*. As to Malandrucco, the irrefutable video evidence shows that the defendant officers did not have any realistic opportunities to stop any assault of Malandrucco by the two male individuals because as soon as they arrived on the scene the beating stopped. *Id*. at ¶¶ 31-33. In fact, once the uniformed officers arrived on the scene, the male individuals did not have any further harmful physical contact with Malandrucco. *Id*. at ¶¶ 25-28. Accordingly, any claim based upon a failure to intervene in this altercation is legally deficient.

With respect to the minimal force used by Officer Postrelko, no failure to intervene claim can survive based upon this brief interaction. The video itself indicates that there was no reasonable opportunity to intercede by anyone. See Ex. 7. The physical contact between Officer Postrelko and plaintiff Malandrucco lasted several seconds, at most. *Id*. Again, even were this Court to second guess a split second reaction by Officer Postrelko himself, it would be inappropriate to impose a Constitutional duty on Officer Torres and Officer Crespo for failing to take action in these few short seconds. *See Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)(affirming dismissal of failure to intervene claim based upon a quick physical altercation between another officer and plaintiff; "We do not believe that Chief Robertson was forced to throw himself between Sergeant Krane's finger and Lanigan's body to interrupt the imminent poke in order to avoid liability under § 1983."); *Howard v. Ealing*, 2012 WL 2827008, *13 (N.D. Ind. 2012)(granting summary judgment on failure to intervene claim based upon "allegations that [the defendant officers] failed to intervene to stop [another officer]'s use of force in throwing [plaintiff] up against the van and onto

15

the ground" because "these two actions occurred in quick succession, such that they had no realistic opportunity to intervene."); *Thomas v. City of Fort Wayne*, 2008 WL 282348, * 8 (N.D. Ind.2008)(finding that a reasonable jury could not possibly conclude that the bystander officers had a chance to stop the force used in pulling plaintiff out of car and striking him in the head and legs when it took only seconds for the event to occur and the officers were occupied restraining the plaintiff); *Wilson v. Town of Mendon*, 294 F.3d 1, 14 (1st Cir.2002)(no liability for an attack that is "over in a matter of seconds"); *Martin v. Anderson*, 107 F.Supp.2d 1342 (M.D.Ala.1999)(two bystander officers who observed another officer kick an arrestee without warning could not be held liable for failing to intervene); *O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir.1988)(bystander officers had no realistic opportunity to prevent three blows in quick succession).

## III.    UNREASONABLE SEIZURE.

It is somewhat unclear whether plaintiffs actually seek to pursue an "unreasonable seizure" claim separate and distinct from a claim of excessive force. However, assuming this to be the case, such claim obviously fails on its face. Again, beyond the brief physical encounter between Officer Postrelko and plaintiff Malandrucco (which is addressed above), the sum total of the interaction between plaintiffs and the defendant officers consisted of several minutes of a verbal exchange during which time plaintiffs were simply told to go home. SMF at ¶ ¶ 35-40. Plaintiffs were not arrested and were not told they were being arrested. *Id*. at ¶ 38. This brief interaction also occurred incident to an ongoing investigation into a physical altercation during which two opposing sides blamed the other for "starting it." *Id*. at ¶¶ 25, 27, 35.

Stated simply, there is no case in the history of Fourth Amendment jurisprudence holding such situation to constitute an "unreasonable seizure" in violation of the Fourth Amendment. *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County,* 542 U.S. 177, 186-88

(2004)(police did not violate the Fourth Amendment by detaining an individual during investigation into assault and asking for identification); *U.S. v. Drayton*, 536 U.S. 194, 200-01 (2002)("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means. If a reasonable person would feel free to terminate the encounter, then he or she has not been seized."); *see also Terry v. Ohio*, 392 U.S. 1 (1968)(brief investigative encounters with the police do not violate the Fourth Amendment). Accordingly, insofar as plaintiffs seek to pursue a separate "unreasonable seizure" claim, defendants are entitled to summary judgment on any such claim.

## IV.   QUALIFIED IMMUNITY.

Even were plaintiffs able to make out any technical Constitutional violation, the defendant officers would be entitled to qualified immunity on any such claims.

Qualified immunity protects police officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In essence, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011); *Eversole v. Steele*, 59 F.3d 710, 717-18 (7th Cir. 1995)("The qualified immunity standard 'gives ample room for mistaken judgments'..."). The protection of qualified immunity applies regardless of whether officer's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231. Indeed, qualified immunity "protects public employees who make reasonable errors in applying even clearly established law." *Vinning-El v. Evans*, 2011 WL 4336661, *3 (7th Cir. 2011).

17

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007). Accordingly, the Supreme Court has "repeatedly...stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.*; *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The burden of defeating an assertion of qualified immunity rests with the plaintiff. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir.1999). This is "a rather heavy burden, and appropriately so because qualified immunity is designed to shield from civil immunity all but the plainly incompetent or those who knowingly violate the law." *Donovan v. City of Milwaukee*, 17 F.3d 944, 952 (7th Cir.1994).

A plaintiff may not simply point to the fact that the use of excessive force is clearly established as being unconstitutional. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Maltby v. Winston*, 36 F.3d 548, 554 (7th Cir.1994). Rather, the burden is on the plaintiff to come forward with specific case law showing the specific force used had previously been determined to be excessive by the courts. *Rice v. Burks*, 999 F.2d 1172, 1174-75 (7th Cir. 1993)("Under the prevailing law, Rice had the burden to point out a closely analogous case that established that he had a constitutional right to be free from the type of force the police officers used on him-some kind of a hit in the back that knocked him to the ground as he attempted to escape after arrest....[T]he right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful.").

In the present case, at minimum, the defendant officers are entitled to summary judgment on the basis of qualified immunity. With respect to the use of force, given the unknown and quickly evolving circumstances presented to the officers, it was reasonable for Officer Postrelko to believe that minimal force was needed in order to subdue Malandrucco for the safety of the plaintiffs, the other individuals and officers on the scene. SMF ¶¶ 25-33. Officer Postrelko had been warned that plaintiff Malandrucco was acting violently and plaintiff Malandrucco did not comply with verbal

18

commands to remain on the ground. *Id.* ¶¶ 25, 27, 35. *See e.g. Threlkeld v. White Castle Systems, Inc.,* 201 F.Supp.2d 834, 840-41 (N.D. Ill. 2002)(qualified immunity applied to excessive force claim based on pushing plaintiff to ground and restraining her when plaintiff was accused of battery and alleged victim was nearby); *Fitzgerald v. Santoro,* 842 F.Supp.2d 1064, 1070 (N.D.Ill. 2012) (finding that officers' use of arm-bar, wrist lock, and handcuff on homeowner in order to secure her arrest for hospitalization against her will as reasonable and did not violate the Fourth Amendment as excessive); *Martin v.Luckett,* 2011 WL 1231024, *8 (N.D. Ill. 2011)(finding that defendant officer was entitled to qualified immunity on arrestee's excessive force claim because the officer's actions were not "so plainly excessive" that he would be on notice that he was violating the plaintiff's rights).

With respect to failure to render medical assistance, as set forth above, there are no cases imposing a duty on police officers to obtain medical assistance for persons who interact with the police for less than five minutes and who are not arrested or physically restrained. *See supra* Part I. In the event this Court were to somehow determine it appropriate to impose such a duty in this case, it obviously cannot be said that such right was clearly established at the time of the incident in this case.

Accordingly, defendant officers are entitled to qualified immunity and summary judgment should be granted in their favor on the basis of qualified immunity.

## V.  CONSPIRACY.

Plaintiffs also appear to allege a "conspiracy" claim. This claim is also deficient. As set forth above, plaintiffs are unable to establish an underlying Constitutional violation. *See supra* Parts I-IV. It is well-established that "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez,* 550 F. 3d 613, 617 (7th Cir. 2008). If a plaintiff cannot establish an underlying constitutional violation, any claim for conspiracy must be dismissed as well. *Cefalu v. Village of Elk*

*Grove*, 211 F. 3d 416, 423 (7th Cir. 2000). Accordingly, plaintiffs' conspiracy count is legally defective as well.

## VI.     SUPPLEMENTAL STATE LAW CLAIMS.

Under Illinois law, law enforcement officers are not liable when acting in "execution or enforcement" of the law unless they engage in willful and wanton misconduct. 745 Ill. Comp. Stat. 10/2-202. Claims for battery and intentional infliction of emotional distress arising from the use of force and investigation of a crime are governed by this standard. *See Chelios v. Heavener,* 520 F.3d 678, 692-93 (7th Cir. 2008); *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 847 N.E.2d 631 (2006); *Smith v. Augustine*, 2009 WL 481639, *8 (N.D.Ill. 2009). The willful and wanton standard is "remarkably similar" to the federal "deliberate indifference" standard, showing an "actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001). For the reasons noted in the preceding sections of this memorandum, it remains clear that the defendant officers cannot be said to have acted with such utter indifference. *See supra* Parts I-V. Thus, the defendant officers remain entitled to summary judgment on plaintiffs' supplemental state law claims.

## CONCLUSION

WHEREFORE, for all the above reasons, defendants, OFFICER BRIAN POSTRELKO, OFFICER MICHAEL TORRES, and OFFICER NELSON CRESPO, pray this Honorable Court grant their motion for summary judgment in its entirety.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:  s/Timothy P. Scahill

20

                                                    Timothy P. Scahill

Timothy P. Scahill (6287296)
Steven B. Borkan (6193463)
Misha Itchhaporia
BORKAN & SCAHILL, LTD.
Two First National Plaza
20 South Clark Street
Suite 1700
Chicago, Illinois 60603
(312) 580-1030