IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW CLARK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10 C 1803 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Officer Brian Postrelko's (Postrelko), Defendant Officer Michael Torres' (Torres), and Defendant Officer Nelson Crespo's (Crespo) (collectively referred to as "Individual Moving Defendants") motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

## BACKGROUND

On February 6, 2010, Plaintiff Matthew Clark (Clark) and Plaintiff Gregory Malandrucco (Malandrucco) allegedly stopped at a restaurant named Arturo's Tacos (Arturo's) to eat. After Plaintiffs finished their meals, Malandrucco allegedly stood

1

up to leave and encountered two men who were allegedly male plainclothes police officers and a female who was allegedly a plainclothes police officer (Plainclothes Officers), who had been dining at Arturo's. One of the male Plainclothes Officers allegedly shoved Malandrucco because Malandrucco had unintentionally obstructed the Plainclothes Officers' path to the cashier or exit. Malandrucco allegedly told the officer that he was putting on his coat and would get out of the way shortly. When Plaintiffs exited Arturo's, the Plainclothes Officers were allegedly waiting in the parking lot.

Plaintiffs allege that the Plainclothes Officers physically assaulted Plaintiffs in the parking lot. Clark alleges that he was told by one of the Plainclothes Officers that they were policemen. Uniformed police officers (Uniformed Officers) then allegedly arrived on the scene and Malandrucco alleges that one of the Uniformed Officers assaulted him. The Uniformed Officers also allegedly escorted the Plainclothes Officers to their car and allowed them to leave the scene without getting their names or otherwise questioning the Plainclothes Officers. In addition, the Uniformed Officers allegedly told Plaintiffs to go home and then left the scene without calling for any medical assistance for Plaintiffs.

Plaintiffs include in their amended complaint claims brought pursuant to 42 U.S.C. § 1983 (Section 1983) alleging excessive force, Section 1983 unlawful

seizure claims, Section 1983 failure to provide medical aid claims, Section 1983 failure to intervene claims, a Section 1983 *Monell* claim, assault and battery claims, intentional infliction of emotional distress claims, Section 1983 conspiracy claims, state law conspiracy claims, and an indemnity claim. Defendants moved to dismiss the instant action, and the court denied the motion in part and granted the motion in part, dismissing the excessive force claims brought by Clark.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a

whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**DISCUSSION**

Individual Moving Defendants move for summary judgment on the claims brought against them.

I. Failure to Provide Medical Assistance Claims

Individual Moving Defendants argue that they are entitled to summary judgment on the failure to provide medical assistance claims because Plaintiffs were never in police custody. Generally, the government "has no affirmative constitutional duty to provide medical services to its citizens." *Brownell v. Figel*, 950 F.2d 1285, 1290 n.4 (7th Cir. 1991). However, a duty to provide medical care

can arise: (1) when a person is in government custody, or (2) when "state action []
creates, or substantially contributes to the creation of, a danger or renders citizens
more vulnerable to a danger than they otherwise would have been." *Id.* (citing
*DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189 (1989)); *Reed
v. Gardner*, 986 F.2d 1122, 1126-27 (7th Cir. 1993); *Paine v. Cason*, 678 F.3d 500,
506 (7th Cir. 2012)(stating that "[p]olice must provide care for the serious medical
conditions of persons in custody"); *Estate of Stevens v. City of Green Bay*, 105 F.3d
1169, 1174 (7th Cir. 1997)(explaining that a duty to provide medical assistance could
arise in "custodial settings in which the state has limited the individual's ability to
care for himself, and . . . when the state affirmatively places the individual in a
position of danger the individual would not have otherwise faced"). Under the
second alternative, which is referred to as the state-created-danger-theory, the
plaintiff must establish that the state actors "knowingly and affirmatively create[d] a
dangerous situation for the public and fail[ed] to take reasonable preventative steps
to diffuse that danger." *Reed*, 986 F.2d at 1126-27.

    A. Waiver of State-Created-Danger-Theory

Individual Moving Defendants first argue that Plaintiffs waived the right to
pursue a state-created-danger-theory, based on a certain statement in Plaintiffs'

5

response to Defendants' motion to dismiss. Plaintiffs argue that they did not waive the theory in response to the motion to dismiss. Regardless, the court made no finding that such a theory was waived by Plaintiffs at the motion to dismiss stage. In fact, in denying Defendants' motion to dismiss on the failure to provide medical assistance claim, the court specifically indicated that Plaintiffs could pursue a state-created-danger-theory, and that at the summary judgment stage, Plaintiffs would need to point to sufficient evidence to support such a theory. (MO 11/17/10, 6). Although Defendants now contend that Plaintiffs waived their ability to pursue the theory, Defendants never sought reconsideration of the court's prior ruling on that point. Thus, Plaintiffs did not waive their right to pursue the state-created-danger-theory.

B. State-Created-Danger-Theory

Individual Moving Defendants argue that Plaintiffs have not pointed to sufficient evidence to support a claim under the state-created-danger-theory. In regard to Torres and Crespo, Plaintiffs admit that neither Torres or Crespo ever touched either Plaintiff. (R ID SF Par. 34). However, Plaintiffs argue that Torres and Crespo observed Malandrucco getting beaten and that Torres and Crespo should have understood that Malandrucco was seriously injured and needed medical

attention. (ID SAF Par. 21, 22, 25). To proceed under the state-created-danger-theory, a plaintiff must show more than that a state actor observed someone being injured. *Reed*, 986 F.2d at 1126-27.

Plaintiffs also claim that they asked officers, including Torres and Crespo, to call for medical assistance. (ID SAF Par. 30). However, the evidence does not reflect that the Individual Moving Defendants took part in placing Plaintiffs in danger. Plaintiffs have failed to point to sufficient evidence that would indicate that Torres or Crespo created a danger to Plaintiffs, or substantially contributed to the creation of a danger, or made Plaintiffs more vulnerable to a danger than they otherwise would have been.

In regard to Postrelko, Plaintiffs contend that Postrelko struck Malandrucco, injuring him, and then left him to suffer without seeking medical assistance for him. (ID SAF Par. 23, 30). The evidence presented at this summary judgment phase does not support Plaintiffs' contentions. Even if the court accepts Plaintiffs' version of events regarding Postrelko's alleged use of excessive force, the undisputed facts show that neither of Plaintiffs were left in a condition that rendered them unable to seek medical assistance on their own. The court notes that, in denying Defendants' motion to dismiss, the court stated that based on the allegations in the complaint at the motion to dismiss phase, it was plausible that Plaintiffs were unable to seek

medical attention on their own. (MO 11/17/10, 7). At this summary judgment stage of the proceedings, the evidence clearly shows otherwise.

Plaintiffs admit that after the altercation at the scene had ended, Plaintiffs called 911 themselves and never requested an ambulance or medical attention, and Plaintiffs admit that they ultimately left the scene on their own and drove to Clark's home, rather than to a hospital. (R ID SF Par. 40-43, 48). Plaintiffs have not presented evidence that would enable a reasonable trier of fact to conclude that Plaintiffs were unable to request medical attention or were prevented by Individual Moving Defendants from doing so. This case is distinguishable from *Regalado v. City of Chicago*, 40 F.Supp.2d 1009 (N.D. Ill. 1999), which is cited by Plaintiffs. (Ans. ID SJ 20). In *Regaldo*, the police beat the plaintiff and he was left by police lying unconscious. *Id.* at 1011-12. The undisputed facts in this case show that before Individual Moving Defendants left Plaintiffs, Plaintiffs were conscious and able to call 911 and request medical assistance for themselves, and that Plaintiffs never requested such assistance during their 911 calls. In fact, Plaintiffs chose to go home, rather than seek emergency medical assistance at a hospital.

Plaintiffs contend that the delay in treatment for Plaintiffs' injuries caused additional pain and suffering. (R ID SF Par. 52). It is undisputed that Plaintiffs agreed to go to the hospital only after police came to Clark's residence and suggested

going to the hospital. (R ID SF Par. 47-48). Thus, the undisputed facts show that any delay in treatment resulted from Plaintiffs' own decision not to seek immediate medical attention. In denying Defendants' motion to dismiss, the court noted that at the summary judgment stage, Plaintiffs would need to point to sufficient evidence to show that the Individual Moving Defendants' actions substantially contributed to an increased danger to Plaintiffs. (11/17/10 MO 6). Plaintiffs have failed to do so and have not shown that a reasonable trier of fact could rule in their favor under the state-created-danger-theory.

### C. Custody of Plaintiffs

Defendants also argue that Plaintiffs have not shown that they were ever in custody for the purposes of their failure to provide medical assistance claims. Plaintiffs contend that they did not feel free to leave the scene while Individual Moving Defendants were present. (ID SAF Par. 32). However, Plaintiffs admit that they were never handcuffed, were never placed in a squad car, and were ultimately told to leave the scene. (R ID SF Par. 36, 38). In addition, there is no evidence showing that Plaintiffs had any reason to believe that they were going to be arrested or charged with any crime. In support of their contention that Plaintiffs were in custody, Plaintiffs cite, for example, *Estate of Stevens v. City of Green Bay*, 105 F.3d

9

1169 (7th Cir. 1997), (Ans. ID SJ 25), in which the Seventh Circuit concluded that the plaintiff was not in custody such that a duty to provide medical services arose. *Id.* at 1176. In *Stevens*, the Court noted that the plaintiff was not handcuffed, was not given *Miranda* warnings, and had no reason to believe that he was going to be charged with a crime. *Id.* Plaintiffs also cite *Dorsey v. St. Joseph County Jail Officials*, 98 F.3d 1527 (7th Cir. 1996). (Ans. ID SJ 25). However, unlike in the instant action, the plaintiff in *Dorsey* had been arrested and was in a detention facility when he was allegedly harmed by jail guards. *Id* at 1528-29. Based on the undisputed facts, no reasonable trier of fact could conclude other than that Plaintiffs were not in custody and that there was no duty by Individual Moving Defendants to provide medical assistance to Plaintiffs. Therefore, Individual Moving Defendants' motion for summary judgment on the failure to provide medical assistance claims is granted.

II. Excessive Force Claim

Individual Moving Defendants argue that Plaintiffs have not pointed to sufficient evidence to support the excessive force claim against Postrelko. For an excessive force claim, the court must employ the Fourth Amendment objective reasonableness standard, under which a plaintiff must show that "the officer's actions

are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident, without regard to the underlying motive or intent of the officer, and without the benefit of hindsight." *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011). Individual Moving Defendants argue that Postrelko's use of force on Malandrucco, as seen in the videos of the incident (Videos), was reasonable under the circumstances. In the Videos, Postrelko is seen turning Malandrucco onto his back and momentarily restraining Malandrucco. Plaintiffs do not dispute that when Individual Moving Defendants pulled up in the squad car, they saw an unknown while male (Unknown Male) kneeling next to Malandrucco, holding him to the ground. (R ID SF Par. 25). Individual Moving Defendants contend that the Unknown Male told the officers that if he let go of Malandrucco, Malandrucco would attack him and start fighting again. (ID SF Par. 27). Plaintiffs dispute that fact, pointing to Malandrucco's deposition, but the cited portion of Malandrucco's deposition fails to contradict Individual Moving Defendants' position. (R ID SF Par. 27). At his deposition, Malandrucco recites his recollection of what happened when Postrelko approached Malandrucco and restrained him. (Mal. Dep. 233-25). Malandrucco did not testify as to whether the Unknown Male spoke to Postrelko, or testify that the Unknown Male said something different than what Individual Moving Defendants claim. (Mal. Dep.

11

233-235). Pursuant to Local Rule 56.1, a denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003). Thus, pursuant to Local Rule 56.1, is it deemed undisputed that the Unknown Male told the officers that if the Unknown Male let go of Malandrucco, Malandrucco would attack him and start fighting again. (ID SF Par. 27); *see also Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)(stating that "[b]ecause of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, [the Court has] consistently upheld the district court's discretion to require strict compliance with those rules")(internal quotations omitted)(quoting *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005)). Plaintiffs also admit that after Postrelko had been told that Malandrucco was a threat and the Unknown Male backed away, Malandrucco began to try and stand. (Mal. Dep. 234). Under such circumstances, no reasonable trier of fact could conclude other than that the momentary use of force by Postrelko to restrain Malandrucco until Postrelko verified that Malandrucco was not a threat to the safety of others, was a reasonable use of force. The Videos clearly show that after a momentary restraint on Malandrucco, Postrelko ceased all use of force and backed away from Malandrucco. Although Plaintiffs assert that it was the Unknown Male,

as opposed to Malandrucco, who had engaged in an assault, there is no evidence that shows that Individual Moving Defendants were present at the scene to view the assault.

Plaintiffs argue that it is for the trier of fact to determine whether Individual Moving Defendants saw the altercation occurring as they pulled up in the squad car. Even when viewing the evidence in the light most favorable to Plaintiffs, the Videos indicate that there was an altercation, and the Individual Moving Defendants arrived on the scene at the last few seconds of the altercation as they pulled up. There is no evidence showing that at that moment Individual Moving Defendants had information concerning who started the altercation or the extent of the altercation. All Individual Moving Defendants knew was that there had been some type of a confrontation and that one person was being restrained on the ground. Whether Plaintiffs were the victims in the altercation and whether Malandrucco actually posed a threat to others is not relevant in considering what Postrelko understood in the first few seconds when he arrived on the scene. Police officers are often confronted with situations where they need to make instantaneous decisions to maintain public safety. The evidence presented through the Videos and other evidence show that Postrelko did exactly that to momentarily prevent a further altercation in order to maintain public safety. Postrelko's actions must be judged according to a reasonable officer

13

standard and not according to arguments in hindsight.  No reasonable trier of fact could view the Videos and conclude other than that Postrelko used a minimal amount of force to momentarily restrain an individual who was purportedly a threat and who was attempting to stand.

Plaintiffs claim that Postrelko approached Malandrucco and "proceeded to force Mr. Malandrucco's face into the pavement by kneeing Malandrucco in his back," and then "proceeded to strike blows, including punching Malandrucco in his face as he lay face down on the pavement."  (ID SAF Par. 23).  However, a review of the Videos fails to show any such conduct by Postrelko during his momentary restraint on Malandrucco.  The Videos do not show Postrelko kneeing Malandrucco or striking blows to Malandrucco, or punching Malandrucco in his face as Plaintiffs have claimed.  The Videos at most show Postrelko restraining Malandrucco momentarily as Malandrucco attempted to get up.  Therefore, based on the above, Individual Moving Defendants' motion for summary judgment on the excessive force claim brought against Postrelko is granted.

III.  Failure to Intervene Claims

Individual Moving Defendants argue that Plaintiffs have not pointed to sufficient evidence to support the failure to intervene claims brought against Torres

and Crespo.  For a Section 1983 failure to intervene claim, a plaintiff must show that "[a]n officer who [w]as present and fail[ed] to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens . . . had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* [that] the officer had a realistic opportunity to intervene to prevent the harm from occurring."  *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

It is undisputed that Individual Moving Defendants did not arrive on the scene until after the altercation between Plaintiffs and Plainclothes Officers had ended.  (R SF Par. 22-37); (Mal. Dep. 232-34).  Thus, there was clearly no opportunity for Individual Moving Defendants to intervene in that altercation.  As to the force used by Postrelko when momentarily restraining Malandrucco, as indicated above, no reasonable trier of fact could conclude that the use of force was unreasonable.  Therefore, as to such use of force, no failure to intervene claim can stand against Individual Moving Defendants.  Therefore, Individual Moving Defendants' motion for summary judgment on the failure to intervene claims is granted.

IV. Unreasonable Seizure Claims

Individual Moving Defendants argue that Plaintiffs have not pointed to sufficient evidence to support the unreasonable seizure claims. A seizure in the context of the Fourth Amendment occurs when "a reasonable person in those circumstances would not feel free to leave." *United States v. Clements*, 522 F.3d 790, 794 (7th Cir. 2008). Individual Moving Defendants argue that Plaintiffs were never in custody, and therefore the evidence does support an unreasonable seizure claim. The Videos indicate that when Postrelko arrived on the scene he momentarily restrained Malandrucco after the Unknown Male told Postrelko that Malandrucco would attack him if not restrained. After that momentary restraint, Plaintiffs contend that they did not feel free to leave the scene. (ID SAF Par. 32). However, Plaintiffs have failed to point to objective evidence to support such a belief. Plaintiffs admit that they were never handcuffed, were never placed in a squad car, and were ultimately told to leave the scene. (R ID SF Par. 36, 38). In addition, there is no evidence showing that Plaintiffs had any reason to believe that they were going to be arrested or charged with any crime. Thus, Plaintiffs have not pointed to sufficient evidence to show that a reasonable trier of fact could conclude that Plaintiffs were in custody. Therefore, Individual Moving Defendants' motion for summary judgment on the unreasonable seizure claims is granted.

## V. Conspiracy Claims

Individual Moving Defendants argue that Plaintiffs have failed to point to sufficient evidence to proceed to trial on any underlying constitutional claim, and that Plaintiffs cannot therefore proceed with a conspiracy claim. As indicated above, Plaintiffs have failed to point to sufficient evidence for a reasonable trier of fact to find for Plaintiffs on any constitutional claims brought against Individual Moving Defendants. *See, e.g, Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008)(stating that "conspiracy is not an independent basis of liability in § 1983 actions"). Therefore, Individual Moving Defendants' motion for summary judgment on the conspiracy claims is granted.

## VI. Qualified Immunity

Individual Moving Defendants move for summary judgment based on qualified immunity. Governmental actors, such as law enforcement officers, "performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *In re Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010)(quoting in part *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and explaining the significance of *Pearson*

17

*v. Callahan*, 129 S.Ct. 808 (2009)). To assess whether an officer is shielded from liability by qualified immunity, a court must make two inquiries: "(1) has the plaintiff alleged facts that, if proved, would establish a constitutional violation; and (2) would a reasonable officer have known his actions were unconstitutional in light of clearly established law?" *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)(indicating that inquiries do not have to be made in a set sequence).

In the instant action, when faced with the circumstances presented in this case, where an officer arrives at a scene where an individual is holding another on the ground, claiming that the individual being held will attack him if not restrained, a reasonable officer would believe that a momentary restraint of the individual on the ground would be appropriate and reasonable and would not violate the individual's constitutional rights. Therefore, Individual Moving Defendants have shown that they are entitled to summary judgment based on qualified immunity.

VII. State Law Claims

Individual Moving Defendants argue that Plaintiffs have not pointed to sufficient evidence to support the state law claims. The Illinois Tort Immunity Act protects governmental officers "from liability for actions committed 'in the execution or enforcement of any law unless such act or omission constitutes willful and wanton

conduct.'" *Chelios v. Heavener*, 520 F.3d 678, 692-93 (7th Cir. 2008)(quoting in part 745 ILCS 10/2-202). In the instant action, Plaintiffs have failed to point to evidence that would enable a reasonable trier of fact to conclude that Individual Moving Defendants' conduct was willful and wanton. Therefore, Individual Moving Defendants' motion for summary judgment on the state law claims is granted.

## CONCLUSION

Based on the foregoing analysis Individual Moving Defendants' motion for summary judgment is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 6, 2013